IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY FRANK KLEIN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 14-1050 |
| | ) |
| JUST ENERGY GROUP, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION

**Conti, Chief District Judge**

**I.     Introduction**

This matter is before the court upon a partial motion to dismiss (ECF No. 17) filed on behalf of defendants Just Energy Group, Inc., Just Energy Limited, Just Energy Pennsylvania Corp., and Just Energy Ohio, LLC (collectively, "Just Energy"). This court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons set forth below, the motion to dismiss will be granted.

**II.     Factual Background**

Because plaintiff Jeffrey Frank Klein ("plaintiff" or "Klein") is proceeding *pro se,* the factual allegations in his complaint are to be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007). At some point in early 2013, plaintiff began receiving debt collection calls on his cell phone from Just Energy related to a debt owed by an individual named Phyllis M. Settles. (Complaint (ECF No. 2) ¶¶ 19-20.) Klein does not know anyone by the name of Phyllis M.

Settles or have any relationship with that individual. (Id. ¶ 21.) The calls typically used an automatic dialing system and featured a prerecorded voice and message. (Id. ¶ 26-27.)

On or about September 30, 2013, Klein contacted Just Energy to inform the company that it had been calling the wrong number. (Id. ¶ 29). Klein explained to a Just Energy representative that he was not associated with (and, indeed, had never heard of) Phyllis M. Settles and requested that the collection calls cease and desist. (Id.) The representative acknowledged his understanding of Klein's demand. (Id. ¶ 30). Nonetheless, the collections calls continued on a regular basis. (Id. ¶ 31.)

At some point in December 2013 or January 2014, Klein spoke with a representative of Just Energy and again explained the mistake. (Id. ¶ 32.) Plaintiff reiterated his demand that the misdirected collection calls cease. (Id. ¶ 33.) Just Energy's representative again indicated that he understood. (Id.) Klein, however, continued to receive collection calls directed at Phyllis M. Settles. (Id. ¶ 34.) In all, Klein received in excess of 200 phone calls from Just Energy, over 150 of which occurred after Klein explained to Just Energy that it had been calling a wrong number. (Id.) According to Klein, these calls have caused him to suffer "extreme emotional distress." (Id. ¶¶ 42, 48, 57.)

### III. Procedural History

On August 7, 2014, plaintiff commenced the instant action by filing a motion for leave to proceed *in forma pauperis*. (ECF No. 1.) The court granted that motion and docketed plaintiff's complaint on August 13, 2014. (ECF No. 2.) In his complaint, plaintiff primarily contends that the erroneous debt collection calls violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count I). (Id. ¶¶ 24-37.) He also asserts common law claims based on theories

2

of private nuisance (Count II), invasion of privacy (Count III), and negligence (Count IV). (Id. ¶¶ 38-57.)

Just Energy moved to dismiss Counts II and IV of the complaint on October 15, 2014. (ECF No. 17.) Plaintiff filed a brief in opposition to that motion on October 21, 2014. (ECF No. 20.) The matter is now fully briefed and ripe for review.

**IV.  Standard of Review**

A motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.. . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of

3

> the line between possibility and plausibility of 'entitlement to relief.'"

(Id.) (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly. Id. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555.) Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2nd Cir. 2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]- that the pleader is entitled to relief.'" Id. (quoting Fed. Rule Civ. Proc. 8(a)(2)).

**IV.   Discussion**

In the instant motion, Just Energy seeks dismissal of Counts II and IV of plaintiff's complaint. Each of these claims will be discussed in detail below.

**A. Private Nuisance (Count II)**

Klein's second claim for relief asserts that the misdirected debt collection calls from Just Energy constituted a private nuisance under Pennsylvania law. In Pennsylvania, courts have adopted the definition of private nuisance set forth in the Restatement (Second) of Torts which defines private nuisance as a "nontrespassory invasion of another's interest in the private use and enjoyment of land." RESTATEMENT (SECOND) OF TORTS § 821D (1979); see Diess v. Pa. Dept. of Transp., 935 A.2d 895, 905 (Pa. Commw. Ct. 2007) ("The Courts of the Commonwealth follow

the description of private nuisance developed in the Restatement (Second) of Torts. Private nuisances are 'nontresspassory invasion[s] of another's interest in the private use and enjoyment of land.'"). As explained by the Third Circuit Court of Appeals, the primary purpose of private nuisance law is to provide "a means of efficiently resolving conflicts between *neighboring*, contemporaneous land uses." Phila. Elec. Co. v. Hercules, Inc., 762 F.2d 303, 314 (3d Cir. 1985) (emphasis in original); see Graham Oil Co. v. BP Oil. Co., 885 F.Supp. 716, 724 (W.D. Pa. 1994) (noting that private nuisance law in Pennsylvania "is designed to resolve conflicts between neighboring landowners."); Essick v. Shillam, 32 A.2d 416, 418 (Pa. 1943) ("An owner has a right, barring malice and negligence, to any use of his property, unless by its continuous use he prevents his neighbors from enjoying the use of their property to their damage.").

Significantly, an individual's "interest in freedom from annoyance and discomfort in the use of land is distinguished from the interest in freedom from emotional distress." RESTATEMENT (SECOND) OF TORTS § 821D cmt. b (1979). While the latter is "purely an interest of personality and receives limited legal protection," the former is "essentially an interest in the usability of land and . . . receives much greater legal protection." Id. Thus, a private nuisance action is only appropriate where "a plaintiff's property interests have been encroached by something that has come onto the property against the plaintiff's will." Cavanaugh v. Electrolux Home Prods., 904 F.Supp.2d 426, 434-35 (E.D. Pa. 2012). Typical examples of private nuisance include invasive or physically damaging activities or excessively loud noises. See, e.g., Dussell v. Kaufman Const. Co., 157 A.2d 740, 743 (Pa. 1960) (vibrations created by the defendant's pile-driving operations caused damage to the plaintiff's neighboring property); Kohr v. Weber, 166 A.2d 871, 874-75 (Pa. 1960) (noise from a neighboring drag racing track caused damage to the plaintiff's chinchilla farm); Evans v. Moffat, 160 A.2d 465, 473 (Pa. Super. Ct. 1960) (a

5

plaintiff's property invaded by "foul-smelling gases emanating from mine refuse dumps" created on a neighboring property); Cassel-Hess v. Hoffer, 44 A.3d 80 (Pa. Super. Ct. 2012) (neighbor's actions allegedly caused mosquito-infested standing water on edge of the plaintiff's property).

Applying these principles to the instant case, it is evident that the misdirected collection calls received by Klein fall squarely outside of the scope of private nuisance law. The instant case is not a dispute between neighboring, contemporaneous landowners concerning the use and enjoyment of their respective properties. Telephone calls received by Klein on his cell phone cannot be construed as an intrusion or encroachment upon his *land*.[1] Klein alleges that those telephone calls were *personally* annoying and intrusive to him. As such, he is asserting an "interest in freedom from emotional distress," rather than "an interest in the usability of land." RESTATEMENT (SECOND) OF TORTS § 821D cmt. b (1979).

Klein attempts to salvage his private nuisance claim by analogizing the unwanted telephone calls to noise pollution from a neighboring business or public utility. He cites a handful of cases in which Pennsylvania courts have held that excessive noise caused by a neighbor's land use amounted to a private nuisance because it encroached upon the neighboring landowners' enjoyment of their own property. See, e.g., Kohr, 166 A.2d at 874-75 (noise from a nearby racetrack constituted private nuisance); Bedminster Twp. v. Vargo Dragway, Inc., 253 A.2d 659, 661-62 (Pa. 1969) (same); Gardner v. Allegheny Cnty., 142 A.2d 187, 190 (Pa. 1958) (speculating that low-flying aircraft over a neighboring property "may amount to a trespass or a nuisance"). Klein suggests that receiving 200 unwanted phone calls over a two-year period rises to the same level of intrusion upon his enjoyment of his land.

---

[1] Indeed, a person's ability to receive bothersome calls on his cell phone is not geographically restricted to his own land at all.

After careful review, the court finds each of the cited decisions to be clearly distinguishable on several grounds. Kohr, Bedminster Township and Gardner each involved a dispute between *adjoining* landowners concerning the offending party's activities. The rationale of those decisions are consistent with the well-established principle that "the goal of nuisance law is to achieve efficient and equitable solutions to problems created by *discordant* land uses" between "*neighboring*, contemporaneous" landowners. Hercules, 762 F.2d at 314 (emphasis in original). The noise-based allegations in the decisions cited by Klein were each so extreme that they caused actual harm to the neighboring landowners' properties and businesses. In Kohr, the neighboring drag strip created noises described as "very great, very loud, nerve racking, a roar, deafening, unbearable, intense, raucous, tremendous, intolerable, screeching, terrific and ear-splitting." Kohr, 166 A.2d at 873-75. The volume and frequency of the noises drove neighbors to leave their properties, abandon the use of portions of their homes, and caused physical damage to the fur produced at a local chinchilla farm. Id. Similarly, in Bedminster Township, witnesses described the noise at issue as "jetlike explosions," a "complete shattering noise," and "somewhat analogous to an operating chain saw," and noted that the noise and traffic congestion from the drag strip interfered with farming activities and vacations. Bedminster Twp., 253 A.2d at 661-62.[2] No similar allegations were made in the instant complaint.

In light of the foregoing discussion, the court declines to extend Pennsylvania's private nuisance doctrine to cover errant phone calls made by a debt collector to a cell phone. Just Energy's motion to dismiss plaintiff's private nuisance claim will be granted.

**B. Negligence (Count IV)**

---

[2] In Gardner, the issue before the court was whether the plaintiffs could establish a trespass or "takings" claim against a private airport based on allegations that aircraft were flying over their houses at a dangerously low altitude. Gardner, 142 A.2d at 191. The court in Gardner never addressed whether such an intrusion constituted a private nuisance.

"In order to prevail on a cause of action in negligence under Pennsylvania law, a plaintiff must establish: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another." Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir. 1993) (citing Morena v. South Hills Health Sys., 462 A.2d 680, 684 n. 5 (Pa. 1983)). Here, Klein contends that Just Energy had a duty to "take reasonable steps to ensure that any calls it makes with respect to collecting a debt or marketing are made to the correct telephone number"; to "remove any individual's name from any type of call list, database, automatic telephone dialing system, or other type of contact machine or database upon request by the individual who received such communication"; and to "investigate further to verify the accuracy of the information they had regarding Phyllis M. Settles." (Complaint (ECF No. 2) ¶¶ 51-52, 54.) Klein alleges that Just Energy's failure to adhere to these standards caused him to experience "extreme emotional distress." (Id. ¶ 57.) No other damages are alleged. (Id.)

In Pennsylvania, courts have restricted claims for emotional distress caused by negligence to the following four factual scenarios: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." Daly v. New Century Trans, Inc., No. 11-2037, 2012 WL 4060687, at * 7 (M.D. Pa. Sep. 14, 2012) (citing Toney v. Chester Cnty. Hosp., 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008)). Klein must also allege that he suffered physical injury or experienced some physical manifestation of his emotional distress. See, e.g., Doe v. Phila. Comm. Health Alternatives AIDS Task Force,

745 A.2d 25, 28 (Pa. Super. Ct. 2000) ("In all cases, a Plaintiff who alleges negligent infliction of emotional distress must suffer *immediate* and *substantial* physical harm.") (emphasis in original); Toney, 961 A.2d at 200 (noting that a plaintiff might recover for negligent infliction of emotional distress where the emotional distress is accompanied by physical symptoms such as "nausea and headaches, insomnia, depression, nightmares, flashbacks, repeated hysterical attacks, stress, hysteria, nervousness, sleeplessness . . . anxiety.").

Plaintiff's complaint fails to invoke any of the four scenarios described above. Although plaintiff correctly notes that extreme emotional distress can produce physical symptoms, he does not allege that *he* suffered any of those symptoms. (Brief in Response (ECF No. 20) at 11.) As such, plaintiff's negligence claim must be dismissed. See, e.g., Mest v. Cabot Corp., 449 F.3d 502, 519 (3d Cir. 2006) ("We agree with the District Court that Pennsylvania law permits recovery for emotional distress as a result of the defendant's negligence only where the claim includes physical injury or in limited circumstances where the plaintiff witnesses injury to another."); Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1997) (rejecting a plaintiff's negligent infliction of emotional distress claim where the only physical manifestation of plaintiff's emotional distress was that he cried at least once a week after being fired); Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 274 (3d Cir. 1985) (noting that "[s]ettled Pennsylvania law" requires a plaintiff seeking damages for negligent infliction of emotional distress to identify an accompanying physical injury).[3]

**C. Leave to Amend**

The Third Circuit Court of Appeals has instructed that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment

---
[3] In light of the court's holding that plaintiff did not identify any physical symptoms caused by his emotional distress, it is unnecessary to determine whether Just Energy owed plaintiff any sort of duty.

9

would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). Consistent with this principle, the court will provide plaintiff with an opportunity to amend his complaint on or before June 21, 2015, if such an amendment can be factually supported. Failure to file an amended complaint on or before that date will result in dismissal of Counts II and IV with prejudice.

**V.  Conclusion**

For the reasons set forth above, Just Energy's motion to dismiss (ECF No. 17) Counts II and IV of the complaint (ECF No. 2) will be granted. Each of those claims will be dismissed without prejudice.

An appropriate order follows.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: May 27, 2015