# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY FRANK KLEIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 14-1050** |
| | ) | |
| **JUST ENERGY GROUP, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

**CONTI, Chief District Judge**

## I.    INTRODUCTION

Pending before the court is a motion for summary judgment (ECF No. 57) filed on behalf of defendants Just Energy Group, Inc., Just Energy Limited, Just Energy Pennsylvania Corp., and Just Energy Ohio, LLC (collectively the "Just Energy Defendants"). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  In his second amended complaint (ECF No. 51), plaintiff Jeffrey Frank Klein ("Klein") claims that numerous telephone calls made to him by or on behalf of the Just Energy Defendants violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq.*, constituted negligence and invaded his privacy. Specifically, Klein sues the Just Energy Defendants for a) violation of the TCPA (Count I), b) common law invasion of privacy under intrusion upon seclusion theory (Count II), c) negligence (Count IV), and d) "vicarious liability" for the negligence of defendants Collectcents, Inc. ("Collectcents") and Data Exchange, Inc. ("Data Exchange") as alleged against defendants

1

Collectcents and Data Exchange under other counts (Count VI).[1]  The Just Energy Defendants also filed a brief in support of their motion, (ECF No. 58), their concise statement of material facts, (ECF No. 59), an appendix, (ECF No. 60), a reply brief, (ECF No. 66), and a reply concise statement of material facts, (ECF No. 67).  Klein filed a response in opposition (ECF No. 62), containing a "statement of undisputed facts" that appears also to identify certain disputed facts. (ECF No. 62 at 3).  In accordance with this court's procedures, the parties filed a Combined Concise Statement of Material Facts ("CCSMF").  (ECF No. 68).  Their Combined Concise Statement of Material Facts indicates uncontested facts, disputes about certain facts and disputes about whether the response of Klein to certain of the facts asserted by Just Energy Defendants in their Concise Statement of Material Facts is adequate to dispute those facts under the Local Rules of the United States District Court for the Western District of Pennsylvania and the Chambers' Rule of this court.  See e.g., (ECF No. 68 at 6 (citing LCvR 56.C.1.a and this court's Chambers' Rule 3.F.c.ii)).  This matter is fully briefed and ripe for disposition.  As more fully explained below, the motion for summary judgment will be granted as to Count I because there is insufficient evidence in the record to connect the Just Energy Defendants to the plaintiff's federal claim under the TCPA.  The motion for summary judgment also will be granted on the remaining state law claims against the Just Energy Defendants on the same grounds.

## II.   PROCEDURAL BACKGROUND

On August 13, 2014, this court granted plaintiff, who was proceeding *pro se* at that time, leave to proceed *in forma pauperis*. The Just Energy Defendants responded to the *pro se*

---

[1] Klein sues defendant Collectcents for negligence under Pennsylvania law in Count III and sues defendant Data Exchange for negligence under Pennsylvania law in Count V.

2

complaint by filing a partial motion to dismiss the complaint, seeking dismissal of Count II for common law private nuisance under Pennsylvania law and Count IV for negligence undr Pennsylvania law for failure to state a claim.  (ECF No. 17).  By order dated May 27, 2015, this court granted Just Energy Defendants' motion to dismiss the counts in the original complaint for private nuisance and negligence without prejudice, holding in its Memorandum Opinion that Pennsylvania does not recognize private nuisance claims outside the land context, and that, with respect to the negligence claim, Klein failed to set forth sufficient factual allegations to invoke any of the four scenarios under which a claim for negligent infliction of emotional distress can proceed under Pennsylvania law and also failed to allege the required physical manifestation of his emotional distress. (ECF Nos. 21 at 8-9; 22).  In the May 27, 2015 order, this court granted Klein leave to file an amended complaint.  Klein, who was still proceeding *pro se*, filed the amended complaint on June 12, 2015.  (ECF No. 24).

On November 16, 2015, counsel for Klein entered his appearance and Klein no longer proceeded *pro se.* (ECF No. 42).  On January 20, 2016, with leave of court, Klein through his counsel filed his second amended complaint and added Collectcents and Data Exchange as defendants to this action.  (ECF No. 51).  The Just Energy Defendants filed their answer to the second amended complaint on January 26, 2016. (ECF No. 52).  After filing that answer and concluding discovery, on February 26, 2016, the Just Energy Defendants filed the present motion for summary judgment. (ECF No. 57).

## III.    FACTUAL BACKGROUND[2]

At the outset, the court is constrained to address certain issues about the parties' filings with respect to their required statements of material facts.  The Just Energy Defendants filed their their Concise Statement of Material Facts in accordance with LCvR 56.B.1.  (ECF No. 59). Klein did not file a separate concise statement.  Instead, Klein responded by filing his opposition containing a section entitled "Statement of Undisputed Facts," in which he indicates that he does not dispute Fact Nos. 1-21, 28, 29, 34, 35, 37, 40, 41 and 44. (ECF No. 62 at 7-8).   In that section, he also indicates certain facts that he does not admit in one fashion or another.  With respect to Fact Nos. 22, 23, 31, and 38, he asserts that he disputes the "independent contractor" characterization with respect to certain third parties "to the extent it implies lack of agency." (ECF No. 62 at 7-8).  With respect to Fact Nos. 24 and 25, he indicates that he admits those facts to the extent the statement is that the Just Energy Defendants "did not physically place the calls," but argues that the calls were placed on the Just Energy Defendants' behalf and for their benefit with "callers identifying themselves as 'Just Energy'" on the call. (ECF No. 62 at 7).  Klein asserts that Fact Nos. 26, 27, 30, 33, 36, 39, 40, 43, and 45, are neither admitted nor denied, but rather he "lacks knowledge as to the truth of this allegation."  (ECF No. 62 at 7-8).  Regarding Fact Nos. 45-51, he does not indicate that he adopts those facts or disputes those facts except to direct the court to section 3 of his opposition regarding his argument that the TCPA applies to calls made to his free Google voice over Internet Protocol ("VoIP") service number ending in 0702 ("Klein's VoIP number") and to restate his allegation that the calls to his VoIP number

---

[2]  The factual background is taken from the undisputed evidence of record, including the parties' Combined Statement of Material Facts, which synthesizes as noted the Just Energy Defendants' Concise Statement of Material Facts with Klein's responses stated in his opposition, (ECF No. 68); evidence not properly disputed on the record; and the disputed evidence of record viewed in the light most favorable to the nonmoving party.  See Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255 (1986).

were charged to him based on his assertion that they were sent from his VoIP service to the Verizon Wireless phone account for which he pays. (ECF No. 62 at 8). Regarding Fact No. 45, Klein "neither admits nor denies" that fact and directs the court to section 3 of his opposition, addressing that fact number twice in response.

Given the manner in which Klein provided his opposition, a discussion of the applicable local rules is appropriate. Local Civil Rule of Court 56.B.1 requires the party moving for summary judgment to file a separate concise statement of material facts and requires that the party cite "to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement, acceptance, or denial of the material fact." LCvR 56.B.1. In further support, the moving party must file an appendix with the documents supporting that party's concise statement of material facts. LCvR 56.B.3. The opposing party also is to provide a separately filed concise statement admitting or denying the facts in the moving party's concise statement, LCvR 56.C.1.a, setting forth the basis for a denial of the moving party's concise statement with reference to the record, LCvR 56.C.1.b, and providing any additional material facts that are necessary for the court's ruling on the motion. LCvR 56.C.1.c. This court's Chambers' Rule 3.F.c.ii requires that the opposing party file a separate document in response to the moving party's concise statement indicating which facts are disputed and citing and attaching the evidence in support of any disputed facts. Local Civil Rule of Court 56.E specifically provides that the facts claimed to be undisputed and material in a party's concise statement "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E.

With respect to the Just Energy Defendants' concise statement of material facts, Klein's responses that Fact Nos. 26, 27, 30, 33, 36, 39, 40, 43, and 45 are neither admitted nor denied are wholly inadequate under the local rules. The Just Energy Defendants supported their concise statement with cites to the record and provided record materials in their Appendix, (ECF No. 60), in compliance with Local Civil Rule of Court 56.B.1 and 56.B.3. Under these circumstances, for purposes of the present motion for summary judgment Fact Nos. 26, 27, 30, 33, 36, 39, 40, 43 and 45 will be deemed admitted. With respect to the disputes regarding the distinction between the calls being physically placed by any of the Just Energy Defendants and the characterization of certain entities as independent contractors, the court will further address these matters.

**A. Just Energy Defendants, Other Just Energy Entities and Master Services Agreements**

Defendant Just Energy Group, Inc., a Canadian corporation, is a natural gas and electricity retailer. CCSMF ¶¶ 14, 18. Defendant Just Energy Group, Inc. has several present and former affiliated entities, CCSMF ¶¶ 19, 20, 21, including defendants Just Energy Limited, Just Energy Pennsylvania Corp., and Just Energy Ohio, LLC. CCSMF ¶ 18. Defendant Just Energy Ohio is a former affiliate and is no longer in existence, having dissolved effective in 2010 under the authority of the Texas Comptroller. CCSMF ¶ 17; (ECF No. 60-2). Just Energy Corporation, which is not a defendant in this lawsuit, was formerly known as Ontario Energy Savings Corporation and also is an affiliate of Defendant Just Energy Group, Inc. CCSMF ¶ 21. Commerce Energy, Inc. d/b/a Just Energy, also not a defendant, likewise is an affiliate of Defendant Just Energy Group, Inc. CCSMF ¶ 20.

Just Energy Corporation, when it was known as Ontario Energy Savings Corporation, entered into a Master Collection Agency Services Agreement dated September 10, 2008

("collection MSA") with defendant Collectcents operating as Credit Bureau of Canada Collections. CCSMF ¶ 37. Defendant Collectcents provides debt collection services to Commerce Energy, Inc. d/b/a Just Energy for its customer accounts. CCSMF ¶ 37. Just Energy Corporation also entered into a Master Services Agreement effective July 21, 2009 with Quick Response Outsourcing, LLC ("QRO") under which QRO provided customer verification and information services to Just Energy Corporation and its affiliates ("customer verification MSA"). CCSMF ¶¶ 27-29.

## B. Account of P.S. [3] and Customer Call and Verification Process

Cedric Frisco ("Frisco"), who worked as an independent contractor[4] for Just Energy Marketing Corporation, which is not a defendant here, signed up P.S. as a customer of Commerce Energy, Inc. d/b/a Just Energy. CCSMF ¶¶ 26, 43. As part of the process of signing up P.S. as a customer, Frisco provided to QRO the correct phone number for P.S. during a verification call with QRO. CCSMF ¶¶ 27, 29, 30, 32, 33. It is alleged by Klein, and apparently not challenged in the present summary judgment motion, that defendant Data Exchange is the successor in interest to QRO (referred to collectively as "Data Exchange/QRO" for present purposes),[5] (ECF No. 51 ¶ 28), the third-party verification services company that operated a verification call center. CCSMF ¶¶ 27, 29, 30, 32, 33. The individual from QRO participating in the verification call with Frisco regarding the Commerce Energy, Inc. d/b/a Just Energy account of P.S. incorrectly recorded the phone number for P.S. CCSMF ¶¶ 32, 33, 34. The number

---

[3] The individual who signed up as a customer of Commerce Energy, Inc. d/b/a Just Energy is not a party to or involved in this suit and the validity of her debt is not at issue. The court will refer to her simply as P.S.

[4] Klein does not dispute the independent contractor status of Frisco.

[5] Klein added Data Exchange as a defendant to this action with the filing of his second amended complaint. (ECF No. 51). The status of Data Exchange as successor to QRO is, in part, the subject of the motion to dismiss filed by Data Exchange, (ECF No. 78), but is not raised as an issue relative to the present motion for summary judgment.

recorded was instead Klein's VoIP number ending in 0702, which was assigned to him for his

Google VoIP service. CCSMF ¶¶ 34, 35; (ECF No. 51 ¶¶ 22, 23). Klein's Google VoIP service

is a free service. CCSMF ¶ 45.

None of the Just Energy Defendants directly place calls to consumers for the purpose of

verifying customer information when marketing energy to customers or for the purpose of debt

collection on delinquent accounts. CCSMF ¶¶ 22-25. The Just Energy Defendants and all of

defendant Just Energy Group, Inc.'s affiliates and subsidiaries use third parties, such as

defendant Data Exchange/QRO, to verify customer information and use third parties, such as

defendant Collectcents, for the purpose of debt collection on delinquent accounts. CCSMF ¶¶

22-25.[6]

## C. **Voluminous Phone Calls to Klein's VoIP number**

In September 2013, the account of P.S. with Commerce Energy, Inc. d/b/a Just Energy

became delinquent. CCSMF ¶ 36. Commerce Energy, Inc. d/b/a Just Energy utilizes

Collectcents for debt collection services with respect to delinquent accounts and Collectcents

performed all debt collection activities related to the account of P.S, pursuant to the collection

MSA. CCSMF ¶¶ 37, 40. Because Klein's VoIP number had been erroneously recorded as the

number for P.S., Commerce Energy, Inc. d/b/a Just Energy provided Klein's VoIP number to

Collectcents for the purpose of collecting on the amount owing on the account of P.S. CCSMF ¶

39. Collectcents made the debt collection calls that were related to the account of P.S., but

placing the calls to Klein's VoIP number. CCSMF ¶ 41. Klein claims that the offending calls

came from a number ending in 7575 or a blocked number as indicated on his caller

---

[6] Given Klein's dispute regarding the Just Energy Defendants' characterization of Collectcents, Data Exchange and QRO as independent contractors, for purposes of the undisputed facts that the court relies on in ruling on this motion for summary judgment the court will not refer to them as independent contractors.

identification. (ECF No. 51 ¶ 46). The number ending in 7575 is neither associated with the Just Energy Defendants nor any affiliates or subsidiaries of defendant Just Energy Group, Inc. CCSMF ¶ 43).

Klein contends that over 200 calls were made to Klein's VoIP number without his permission using an autodialer or pre-recorded voice and were made to attempt to collect a debt of P.S. (ECF No. 51 ¶¶ 25, 37, 43, 44). The Just Energy Defendants indicate that they dispute the number and timing of the alleged 200 calls, but admit that the actual number of calls is immaterial for purposes of their present motion. (ECF No. 57 at 1 ¶ 2). As acknowledged by the Just Energy Defendants, the records of Collectcents readily support a finding of at least 90 calls. (ECF Nos. 58 at 12; 60-6). There appears to be no dispute that numerous[7] calls were made to Klein's VoIP number.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or

---

[7] Ninety calls by any fair characterization would constitute numerous calls for the purpose of the court's analysis. See Leahey v. Franklin Collection Serv., Inc., 756 F.Supp.2d 1322, 1328 (N.D. Ala. 2010) (referring to 29 calls as numerous); see also Hoover v. Monarch Recovery Mgmt., Inc., 888 F. Supp. 2d 589, 588-89 (E.D. Pa. 2012) (allegation that ten calls a week for eleven weeks was sufficient to survive motion to dismiss on the issue of intent to annoy, abuse or harass).

her favor.  Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007).

The burden on a motion for summary judgment is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir.1996). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005).  Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof or that there is an absence of evidence to support the nonmoving party's case.   Celotex Corp., 477 U.S. at 322, 325; Marten v. Godwin, 499 F.3d 290, 295 (3d Cir.2007).

Once the movant meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex, 477 U.S. at 323–25.  The nonmoving party must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial.  Id. at 324.  The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings.   Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

One of the principal purposes of summary judgment is to isolate and dispose of factually

unsupported claims or defenses. Celotex, 477 U.S. at 323–24. The summary judgment inquiry asks whether there is a need for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000) (citing decisions); Liberty Lobby, 477 U.S. at 248–49; Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. Liberty Lobby, 477 U.S. at 248.

A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more those elements. Celotex, 477 U.S. at 322–23. If the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law. Liberty Lobby, 477 U.S. at 249. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every challenged] element essential to

that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F.App'x 353, 354 (3d Cir.2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir.2002)). Inferences based upon speculation or conjecture do not create a material factual dispute sufficient to defeat a motion for summary judgment. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## V.   **DISCUSSION**

Just Energy Defendants argue that all of Klein's claims against them fail because: 1) he cannot show as required for his TCPA claim that he is charged for his VoIP service; 2) there is no liability of the Just Energy Defendants for the calls, either directly or vicariously, where they did not make the calls to Klein's VoIP number and do not otherwise have sufficient connection to the challenged calls; 3) he cannot show that there was an intentional invasion of his privacy by the Just Energy Defendants; and 4) he cannot show a duty owed to him by or that was breached by the Just Energy Defendants and cannot sufficiently establish damages caused by any such breach.  (ECF No. 55 at 10, 22).  For the most part, the dispute here centers on two matters:  1) whether under the TCPA's "charged call provision" a call to Klein's VoIP number constitutes a call "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call," 47 U.S.C. § 227(b)(1)(A)(iii); and 2) whether any of the

Just Energy Defendants had any connection to P.S. or the calls made to Klein.

### A.     TCPA Claim (Count I)

Klein seeks to hold the Just Energy Defendants liable under the TCPA for violation of §

227(b)(1)(A)(iii).  (ECF Nos. 51 ¶ 42; 62 at 2, 12).  The TCPA provides in pertinent part:

> **(b) Restrictions on use of automated telephone equipment**
> (1) Prohibitions.  **It shall be unlawful** for any person within the United States, or any person outside the United States if the recipient is within the United States—
> **(A) to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) **using any automatic telephone dialing system or an artificial or prerecorded voice—**
> (i) to any emergency telephone line . . . ;
> (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or
> (iii) **to any telephone number assigned to** a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or **any service for which the called party is charged for the call** . . . .

47 U.S.C. § 227(b)(1) (emphasis added).

The TCPA provides a private right of action for violation of 47 U.S.C. § 227(b)(1) as

follows:

> (3) Private right of action.  A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

47 U.S.C. § 227(c) relates to residential telephone subscribers and governs calls to the

National Do-Not-Call Registry, *see* 47 U.S.C. § 227(c)(1) (authorizing the FCC to initiate rulemaking concerning the privacy rights of residential telephone subscribers). Section 227(c)(5) provides for a private right of action for § 227(c) violations where a person has received more than one telephone call "by or on behalf of" the same entity in violation of § 227(c). 47 U.S.C. § 227(c)(5).

To prevent evasion of the TCPA's call prohibitions, the Federal Communications Commission ("FCC") has treated calls made by a third party on behalf of a company as if the company itself made the call, whether in relation to collection and solicitations calls subject to § 227(b) or further rules governing solicitation calls addressed in § 227(c). Indeed, with respect to collection calls under § 227(b)(1)(A)(iii) made to wireless numbers, the FCC explained:

> To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. . . . [A] creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991:  Request of ACA International for Clarification and Declaratory Ruling, 23 FCC Rcd. 559, 564 ¶ 10 (2008) (footnotes omitted). In its ruling, the FCC noted that the prohibitions on the use of autodialers in § 227(b)(1)(A)(iii) apply regardless of the content of the call, as opposed to the separate restrictions of § 227(c) on "telephone solicitations" that do not apply to calls solely for the purpose of collecting a debt. 23 FCC Rcd. at 565 ¶ 11.

As a remedial consumer protection statute, Gager v. Dell Financial Services, LLC, 727

F.3d 265, 271 (3d Cir. 2013), the TCPA's language is to be construed "broadly to effect its purpose." Lesher v. Law Offices of Mitchell N. Kay, P.C., 650 F.3d 993, 997 (3d Cir. 2011). If proposed interpretations of the TCPA are equally plausible, the scales tip in favor of the consumer. Leyse v. Bank of America Nat. Ass'n, 804 F.3d 316, 327 (3d Cir. 2015).

Regarding the TCPA, the Supreme Court has explained:

Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls to private homes—prompted Congress to pass the Telephone Consumer Protection Act of 1991 (TCPA or Act), 47 U.S.C. § 227. . . . The Act bans certain practices invasive of privacy and directs the Federal Communications Commission (FCC or Commission) to prescribe implementing regulations.

Mims v. Arrow Fin. Servs., LLC, --- U.S. ---, 132 S. Ct. 740, 744 (2012). The Court of Appeals for the Third Circuit observed that "Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." Gager, 727 F.3d at 268 (citations omitted).

The legislative history of the TCPA refers to prerecorded calls as "an intrusive invasion of privacy" and indicates that the TCPA is aimed at protecting individuals' privacy rights while balancing legitimate telemarketing practices. Leyse, 804 F.3d at 325-26 (citing Telephone Consumer Protection Act of 1991, Pub.L. No. 102–243, § 2(5)-(6), (10), 105 Stat. 2394 (note following 47 U.S.C. § 227); § 2(9), (12)-(13)). Debt collection calls as well as telemarking calls are within the TCPA's purview. Gager, 727 F.3d at 273; Fenescey v. Diversified Consultants, Inc., Civ. Act. No. 14-347, 2014 WL 252651, at *2 (M.D. Pa. June 4, 2014); Forrest v. Genpact Services, LLC, 962 F. Supp. 2d 734, 736 (M.D. Pa. 2013) (holding plaintiff stated a claim under both the TCPA and the FDCPA for excessive debt collection calls).

For purposes of the TCPA, it does not matter that P.S. was the intended recipient of the calls. In Leyse, the Court of Appeals for the Third Circuit held that the individual who answers

the robocall[8] has standing to sue. 804 F.3d at 327. The aggrieved persons under the TCPA's provisions include the actual recipient of the telephone call, 804 F.3d at 325-326, because "[i]t is the actual recipient, intended or not, who suffers the nuisance and invasion of privacy." Leyse, 804 F.3d at 326.

VoIP service, like the service used by Klein, is provided over broadband connection, cable modem, fiber to the premises (FTTP), digital subscriber line (DSL) or other wireline, and fixed wireless or other connections. FCC Releases New Local Telephone Competition Data: Third Collection to Comprehensively Include Interconnected VoIP, 2011 WL 97677, at *1-2 (FCC Jan. 11, 2011). VoIP service is becoming more common. Id.

> Interconnected VoIP service represents an important and rapidly growing part of the U.S. voice service market. [It] enables voice communications over a broadband connection and allows users both to receive calls from, and place calls to, the public switched telephone network, like traditional phone service. Providers of the service include companies like Vonage as well as cable and telephone companies that own their own networks.

Id.

There is no dispute that the challenged calls were made to Klein's VoIP number. The Just Energy Defendants, however, dispute that any of them can be held liable for the calls.

### 1. Direct Liability

As a threshold matter, the court considers the Just Energy Defendants' argument that they are not liable because they are not sufficiently connected to the challenged calls. They argue that they are not directly liable under the TCPA for any of the challenged calls because they did not make any of the calls and the prohibition of § 227(b)(1)(A)(iii) by its express language provides for the liability of the party making the call. (ECF No. 58 at 16).

---

[8] Automatically dialed calls are commonly referred to as "robocalls." See Leyse, 804 F.3d at 322.

> The plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that "make" a telephone call or text. 47 U.S.C. § 227(b)(1)(A)(iii). . . . [M]any of the courts that have considered this provision have held that the verb "make" imposes civil liability only on the party that places the call or text.

Melito v. American Eagle Outfitters, Inc., Civ. Act. Nos. 14-02240, 15-39, and 15-2370, 2015 WL 7736547, at *4 (S.D. N.Y. Nov. 30, 2015) (summarizing decisions).

The court agrees with the Just Energy Defendants. The uncontroverted evidence shows that the calls were not made by or on behalf of the Just Energy Defendants and instead were made by Collectcents on behalf of Commerce Energy, Inc. d/b/a Just Energy, the entity with which P.S. contracted. Thus, the calls were neither made by or on behalf of the Just Energy Defendants.

Klein argues that direct liability under the TCPA extends not only to a party on whose behalf the call is made but also extends to a party who stands to benefit from the call, citing Hartley-Culp v. Credit Management Co., Civ. Act. No. 14-282, 2014 WL 4630852 (M.D. Pa. Sept. 15, 2014). (ECF No. 62 at 11). It appears that Klein intended to cite Hartley-Culp v. Green Tree Servicing, LLC, 52 F. Supp. 3d 700, 703 (M.D. Pa. 2014) (holding TCPA imposes direct and vicarious liability on an entity on whose behalf the call is placed), as Credit Management Co. addressed bifurcation issues. Despite Klein's representation, neither Credit Management Co. nor Green Tree Servicing, LLC suggest the broad sweeping extension of liability, whether direct or vicarious, to parties merely because they "stand to benefit" from the call. The FCC expressed in In the Matter of the Joint Petition filed by Dish Network, LLC, 28 FCC Rcd. 6574 (2013) (Declaratory Ruling): "in sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller

under . . . either section 227(c) or section 227(b)." 28 FCC Rcd. at 6593 ¶ 47. The court is persuaded that a party is not liable merely because they stand to benefit from the call. Even if that determination is incorrect, Klein still would not prevail because he did not point to evidence sufficient for a reasonable jury to find that the Just Energy Defendants stood to benefit.

Accordingly, the Just Energy Defendants are entitled to summary judgment on the claim for direct violation of the TCPA because the calls were not made by or on behalf of them.

### 2. Vicarious Liability under the TCPA

Klein relies on various FCC rulings to assert that the Just Energy Defendants are vicariously liable for violations of the TCPA under an agency theory, citing to an FCC Ruling addressing the liability of third-party telemarketers. According to the FCC, federal common law agency principles providing for vicarious liability for calls initiated by a third party advance the goals of the TCPA. In the Matter of the Joint Petition Filed by Dish Network, LLC., 28 FCC Rcd at 6587 ¶ 35. The United States Supreme Court in Campbell-Ewald Co. v. Gomez held that a party may be liable under the TCPA in accordance with tort-related vicarious liability rules. Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663, 674 (2016) (the Court had no cause to question the FCC's ruling that vicarious liability applies under the TCPA).

"[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." Meyer v. Holley, 537 U.S. 280, 285, 123 S.Ct. 824, 828 (2003). "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." 537 U.S. at 285, 123 S.Ct. at 829. Thus, a seller or creditor cannot shield itself

from liability simply by outsourcing telemarketing or collection calls to a third party. <u>Gomez v. Campbell-Ewald Co.</u>, 768 F.3d 871, 877 (9th Cir. 2014), <u>aff'd</u> 136 S.Ct. 663 (2016). "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." <u>Gomez</u>, 768 F.3d at 879. Vicarious liability under the TCPA may be established under a broad range of agency theories, including formal agency, apparent authority and ratification. 28 FCC Rcd. at 6582 ¶ 24, 6584 ¶ 28, 6588 ¶37. The relationship between the parties is paramount in determining whether there is vicarious liability. <u>Gomez</u>, 768 F.3d at 878.

### a) <u>Independent Contractor Status</u>

In their concise statement and in the parties' Combined Concise Statement of Material Facts, the Just Energy Defendants refer to the third parties used to verify customer information and for debt collection purposes as "independent contractors." (ECF NO. 59 ¶¶ 22-25); CCSMF ¶¶ 22-25. The Just Energy Defendants argue that they cannot be held liable for the acts of independent contractors, citing <u>Marshall v. Southeastern Pennsylvania Transp. Authority</u>, 587 F. Supp. 258, 261-62 (E.D. Pa. 1984) ("As a general rule, the employer of an independent contractor is not liable for physical harm caused another by an act or omission of the contractor or his servants."), and <u>Woolfolk v. Duncan</u>, 872 F. Supp. 1381, 1392 (E.D. Pa. 1995) ("Under Pennsylvania law, an employer may be liable for the intentional torts committed by a servant, but not for those committed by an independent contractor."). (ECF No. 58 at 19). Klein disputes the use of the term "independent contractor" to refer to the status of Collectcents, Data Exchange and any entities and individuals physically placing the challenged calls or recording customer phone numbers to the extent the term's use is intended to imply a lack of agency. (ECF No. 62

at 7); CCSMF ¶¶ 22, 23, 24, 25.

The collection MSA pursuant to which Collectcents performs debt collection services, including debt collection calls, and the verification MSA pursuant to which Data Exchange/QRO provides customer information verification services label the status of Collectcents and Data Exchange/QRO as an "independent contractor" and likewise disavow agency status. (ECF Nos. 60-4 § 10.1; 60-5 ¶¶ 1, 6). A label or express denial of status by the parties to a contract is not alone determinative and the court must consider the actual practice between the parties. Zeno v. Ford Motor Co., Inc., 480 F. Supp. 2d 825, 841-848 (W.D. Pa. 2007) (discussing no-agency clause in contract between automobile dealer and manufacturer and citing Restatement (Third) of Agency § 1.02 ("Parties' Labeling and Popular Usage Not Controlling") cmt. b. ("The parties' agreement may negatively characterize the relationship as not one of agency, or as one not intended by the parties to create a relationship of agency or employment. Although such statements are relevant to determining whether the parties consent to a relationship of agency, their presence in an agreement is not determinative and does not preclude the relevance of other indicia of consent.")); see Beckman v. Vassall-Dillworth Lincoln-Mercury, Inc., 468 A.2d 784, 790-91 (Pa. Super. 1983) (considering "no-agency" clause and lack of evidence as to express, implied or apparent authority in rejecting plaintiff's assertion of agency relationship).

In Zeno, this court denied without prejudice a motion for summary judgment with respect to the issue of agency and pursuant to Federal Rule of Civil Procedure 56(f) (now Rule 56(d)) permitted discovery requested by the nonmoving party about direction and control. 480 F. Supp. 2d at 848. The parties in Zeno submitted the sales and service agreement between the manufacturer and the dealer and also "superficially" discussed facts relevant to the inquiry about

agency, but did not analyze either the agreement or the facts in the record "in sufficient detail" to enable the court to determine whether there was a triable issue of fact regarding the agency relationship. 480 F. Supp. 2d at 848. Similarly, in the case *sub judice*, Just Energy Defendants provide the master services agreements with the verification company and the collection company, cite the "independent contractor" and "no-agency" provisions, but do not undertake an analysis of the facts *vis a vis* agency principles. See Myzkowski v. Penn Stroud Hotel, Inc., 634 A.2d 622, 625 (Pa. Super. Ct. 1993) (discussing principal and agent in context of master-servant and independent contractor relationship and indicating that "the focus of our inquiry should be whether the alleged master has day-to-day control over the manner of the alleged servant's performance.").

The agreements referring to Collectcents and QRO as independent contractors, (ECF 60-4 at 11 Art. 10 § 10.1 [Master Services Agreement]; ¶60-5 at 2 ¶ 6 [Master Collection Agency Services Agreement]), also provide procedures to be followed. That evidence, however, is not sufficient for a reasonable jury to conclude that there was a master-servant relationship between the Just Energy Defendants and Collectcents or QRC. There appears to be insufficient evidence in the record of control over the manner of work. See e.g. (ECF 60-5 at 2 ¶¶ 1, 2). Whether an individual or entity is an "independent contractor" such that the party contracting with that individual or entity would not be liable for the conduct of that individual or entity or an "agent" such that the Just Energy Defendants would be liable for the conduct of its agent depends on the facts and circumstances of each case. Castle Cheese, Inc. v. MS Produce, Inc., Civ. Act. No. 04-878, 2008 WL 4372856, at *6-9 (W.D. Pa. Sept. 19, 2008)(discussing distinction between independent contractor, principal-agent and master-servant relationship and observing that status

of agent and independent contractor are not mutually exclusive). Despite their dispute, neither party attempts any analysis about the possible independent contractor status of Collectcents and Data Exchange/QRO. As a result of the moving parties' failure to engage in the analysis, the court declines to accept their characterization of Collectcents and Data Exchange/QRO as independent contractors for purposes of resolving the summary judgment motion.

### b) <u>Apparent Authority</u>

Klein asserts that the Just Energy Defendants are vicariously liable for the calls made by Collectcents under apparent authority jurisprudence, citing to FCC rulings under the TCPA, <u>Richardson v. John F. Kennedy Memorial Hosp.</u>, 838 F. Supp. 979, 985 (E.D. Pa. 1993) (citing <u>Volunteer Fire Co. v. Hilltop Oil Co.</u>, 602 A.2d 1348, 1351-52 (Pa. Super. Ct. 1992)), and the Restatement 3d of Agency § 4.01. (ECF No. 62 at 9-10). Klein points to a statement made during the calls. Klein provided twelve recorded voice mail messages, presumably representing the general nature of the offending calls. (ECF No. 62-1).[9] These voice messages appear to be messages that were left on Klein's free Google VoIP's message service. <u>Compare</u> (ECF No. 60-7), (ECF NO. 60-9) and (ECF No. 62-1).[10] In the statement made on these calls, the Collectcents' caller identifies herself as "Just Energy" or "Just Energy Ohio."[11] (ECF No. 62 at 14, 62-1). From this, Klein asserts that Collectcents had apparent authority to make the call on

---

[9] Audio recordings of twelve phone calls were intended to be filed as Appendix 1 to plaintiff's opposition. The Appendix, however, appeared to be merely a scan of a page listing the recordings. (ECF No. 62-1). Pursuant to an order of the court (ECF No. 71), plaintiff provided copies of the audio files for the court's review.

[10] The court reviewed additional records related to the challenged calls and compared them with the audio call records as submitted by Klein. (ECF No. 62-1). Ten of the twelve calls appear to be reflected on Klein's Google VoIP service records that he provided to the Just Energy Defendants in discovery as Google Voice or Text messages. (ECF No. 60-9). The pages from Klein's Google VoIP service that presumably would include the dates of the other two calls, the voice messages provided by Klein for a February 7, 2014 call and a March 24, 2014 call, are not in the record for the court's review.

[11] With respect to the statement made on the voice messages that the call is "from Just Energy Ohio," (ECF No. 62-1), whatever the reason for the statement, based on the uncontroverted evidence the call was made for Commerce Energy, Inc. d/b/a Just Energy and not Just Energy Ohio, LLC, sued here, and Just Energy Ohio, LLC had dissolved effective in 2010 well prior to the time when the calls were made. CCMSF ¶¶ 17, 26, 43

behalf of presumably all the Just Energy Defendants and perhaps even any entity that uses the name "Just Energy."  Klein's argument stretches agency principles and ignores the authority on agency on which he relies.

In the case of telemarketing calls challenged under § 227(b), the FCC found "illustrative" certain examples of apparent authority rendering the seller of goods or services vicariously liable for the telemarketing company's calls, stating:

> To provide guidance in this area, we find the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations.  For example, . . . that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control . . . as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.

In the Matter of the Joint Petition filed by Dish Network, LLC, 28 FCC Rcd. at 6592 ¶ 46.

As stated in Richardson, "[a]n agent can bind his principal where the agent has actual or apparent authority. . . . Apparent authority exists *where the principal, by words or conduct, leads people with whom the alleged agent deals to believe* that the principal has granted the agent the authority he purports to exercise."  838 F.Supp at 985 (internal citations omitted) (emphasis added).  In Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co., 602 A.2d 1348 (Pa. Super. Ct. 1992), the court commented that "[a]gency 'cannot be assumed from the mere fact that one does an act for another.'" 602 A.3d at 1351 (quoting Bross v. Varner, 48 A.2d 880, 881 (Pa. Super. Ct. 1946)).  The alleged agent cannot create the agency relationship or bind the principal by the agent's acts alone.

Richardson involved whether a sub-agent had authority to bind a corporation. In Richardson, where the executive director/president directed the plaintiff to deal with the sub-

agent regarding the contract, and the hospital's by-laws vested the president and executive director with authority to enter contracts on the hospital's behalf. The court found under those circumstances there was sufficient evidence from which a reasonable jury could find that the executive director/president had authority to enter into a contract without hospital board approval and that the "special assistant to the president" likewise had such authority. Richardson, 838 F.Supp at 985-86. Thus, the parties' cross-motions for summary judgment on plaintiff's claim for breach of contract were denied.

Klein argues that because Collectcents identified itself as "Just Energy" in the phone calls, the Just Energy Defendants either must have granted Collectcents that right or were aware that Collectcents' callers identified themselves as such to call recipients and thus Collectcents had the apparent authority to make the calls on behalf of the Just Energy Defendants. (ECF No. 62 at 14). The record evidence at most might support that Collectcents had authority on behalf of Commerce Energy d/b/a Just Energy to make the calls regarding the account of P.S. The evidence does not in any way show a relationship between Collectcents and any of the Just Energy Defendants regarding the account of P.S. or show that the Just Energy Defendants by their words or conduct led Klein to believe the calls were on behalf of any of the Just Energy Defendants.

While it is true as Klein argues that this court need not conclude that a reasonable jury could find that any of the Just Energy Defendants directly communicated with Klein in order to hold them liable, it is not true that the Just Energy Defendants all can be held liable under agency theory where there is no evidence that the calls made to Klein's VoIP number by Collectcents regarding the account of P.S. were made on behalf of any Just Energy Defendant. Klein's

argument and theory are insufficient to defeat the motion for summary judgment. Klein did not adduce sufficient evidence for a reasonable juror to find that Collectcents was acting as the agent of any of the Just Energy Defendants in making the calls to Klein in order for them to be held vicariously liable.

### c) **Ratification**

Klein asserts that the Just Energy Defendants ratified the acts of Collectcents and QRO. Klein cites to the Restatement (Third) of Agency, Ratification Defined, which provides:

(1) Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.
(2) A person ratifies an act by
(a) manifesting assent that the act shall affect the person's legal relations, or
(b) conduct that justifies a reasonable assumption that the person so consents.

RESTATEMENT (THIRD) OF AGENCY, § 4.01(b). Klein cites the portion of comment d to that section, which notes that acceptance of the benefit of the transaction ratifies the act of entering into the transaction even though the party may manifest dissent to being bound by the legal consequences of the act. RESTATEMENT (THIRD) OF AGENCY, § 4.01(b), cmt. d, ¶ 2; (ECF No. 62 at 11). Klein argues that the Just Energy Defendants can be liable by virtue of the fact that the calls *presumably* would have allowed them to collect money owed to them. (ECF No. 62 at 11).

This argument, however, ignores both the authority Klein cites and the record evidence. Comment d makes clear that "[r]atification requires an objectively or externally observable indication that a person consents that another's prior act shall affect the person's legal relations." RESTATEMENT (THIRD) OF AGENCY, § 4.01, cmt. d. Klein did not point to any observable indication that any of the Just Energy Defendants, as opposed to Commerce Energy d/b/a Just Energy, consented to the prior acts of Collectcents in calling Klein's VoIP number, much less

that the Just Energy Defendants accepted or received any benefit. These calls at most would have been for the benefit of Commerce Energy d/b/a Just Energy. Klein neither provides nor points to any evidence of ratification by the Just Energy Defendants in the form of an act manifesting affirmance of the calls, manifesting assent for the calls, or justifying a reasonable assumption that any Just Energy Defendant consented. *See* RESTATEMENT 3D OF AGENCY, § 4.01. Klein's arguments involve speculation and conjecture, which are insufficient for a jury to render a verdict in his favor on this argument. See Robertson, 914 F.2d at 382 n.12.

In arguing vicarious liability, Klein also cites to the FCC's indication that the seller in the telemarketing context, and presumably the creditor in the debt collection context, would be in the best position to monitor and police third-party compliance with the law and liability would give the seller and creditor the best incentive to ensure compliance with the law. (ECF 62 at 8-9). Klein misses the point that in the context of this case, the named Just Energy Defendants simply are not in the position of creditor or seller vis-a-vis Klein because non-party Commerce Energy, Inc. d/b/a Just Energy is the entity with which P.S. opened the account.

### 3. Lack of Relationship of Just Energy Defendants to the Challenged Calls

The Just Energy Defendants assert that there is no evidence in the record of any relationship, agency or otherwise, between defendants Collectcents and Data Exchange/QRO on the one hand and the just Energy Defendants on the other with respect to the calls made to Klein's VoIP number or with respect to the account of P.S. (ECF No. 58 at 2, 16, 18-20). Klein does not point to any evidence regarding this matter in his opposition.

Defendants Just Energy Limited, Just Energy Ohio, LLC and Just Energy Pennsylvania Corporation are present or former affiliates of Defendant Just Energy Group, Inc. The Just

Energy Defendants produced uncontroverted evidence that the entity known as Just Energy Ohio, LLC, ceased to exist prior to any of the calls at issue. Just Energy Limited is a holding company that conducts no business and there is no evidence that it engaged in any conduct related to this action. Similarly, with respect to Just Energy Pennsylvania Corp., there is no evidence that it engaged in any conduct related to this action.

Klein alleges in his second amended complaint that the Just Energy Defendants are closely-related entities, (ECF No. 51 at 6 ¶ 40), but offers no facts, basis or argument for finding liability of one for the other, or any analysis which would support a finding of liability of any Just Energy defendant. In opposition to summary judgment, Klein states in a footnote that Commerce Energy, Inc. d/b/a Just Energy is an affiliate of Just Energy Group, Inc. (ECF 62 at 5 n.1), yet there is no allegation in his second amended complaint to support that statement and Klein adduced no evidence that could establish any basis for an affiliate to cause the Just Energy Defendants to be liable for the conduct of Commerce Energy, Inc. d/b/a Just Energy with respect to the account of P.S. and the calls made to Klein's VoIP number.

The Just Energy Defendants acknowledge that "Just Energy Group, Inc. is the parent corporation of all the Just Energy entities relevant to this lawsuit." (ECF No. 57 at 8 ¶ 41). They do not indicate precisely what they mean by "Just Energy entities relevant to this lawsuit." The court will assume for the purpose of resolving this motion that they mean that Just Energy Group, Inc. is the parent corporation of the other Just Energy Defendants as well as Commerce Energy, Inc. d/b/a Just Energy. As a general principle, a parent corporation is a separate entity from its subsidiaries. Kiehl v. Action Mfg. Co., 535 A.3d 571, 575 (Pa. 1987). Klein provides no argument or evidence to justify disregarding the corporate veil, and therefore, the separate

nature of the Just Energy Defendants and other Just Energy entities will be respected.  See Kiehl, 535 A.3d at 575 (refusing to pierce the corporate veil); Culbreth v. Amosa (Pty) Ltd., 898 F.2d 13, 15 (3d Cir. 1990) (observing that in Pennsylvania to disregard the separate entities and pierce the corporate veil on an alter-ego theory, a party must show that controlling corporation so dominated and controlled the other's affairs that the separate existence is a mere sham).

In sum, the evidence adduced in this case is not sufficient to support a finding by a reasonable jury that Collectcents was acting as an agent (whether under actual authority, apparent authority or ratification theories) for any of the Just Energy Defendants in making any of the calls mistakenly placed to Klein's VoIP number instead of the number of P.S.  The Just Energy Defendants are entitled to summary judgment in their favor on Klein's claim that those defendants are vicariously liability under the TCPA.  Because of the court's determination that Klein failed to adduce sufficient evidence connecting the Just Energy Defendants to the challenged calls, the court need not resolve and leaves for another day whether the calls to Klein's VoIP number are subject to the TCPA under the charged call provision of 47 U.S.C. § 227(b)(1)(A)(iii) because Klein's particular VoIP service from Google is free.

### B.  Remaining State Law Claims

Because the court grants summary judgment on the only federal claim by Klein against the Just Energy Defendants, the TCPA claim, pursuant to 28 U.S.C. § 1367(c)(3), the court must consider whether it will exercise supplemental jurisdiction over Klein's state law claims against the Just Energy Defendants for invasion of privacy, negligence and vicarious liability for the conduct of Collectcents and Data Exchange, Angeloni v. Diocese of Scranton, 135 F.App'x 510, 514 (3d Cir. 2005), even though the case continues against defendants Collectcents and Data

Exchange. 5J Oilfield Services, LLC v. Pecha, 2013 WL 3458163 (W.D. Pa. July 9, 2013) (declining supplemental jurisdiction as to one party only with case continuing against other defendants); Bangura v. City of Philadelphia, 2007 WL 3376676 (E.D. Pa. Oct. 15, 2007) (same).

Although Klein, who is domiciled in and a legal resident of Pennsylvania, (ECF No. 51, at ¶¶ 1, 2), avers that the court has both federal question and diversity jurisdiction, (ECF No. 51, at ¶¶ 14, 15), the evidence submitted on summary judgment shows that the parties are not completely diverse. Klein's second amended complaint provides that defendant Just Energy Pennsylvania Corp. is a Delaware Corporation doing business in Pennsylvania, but does not identify its principal place of business. (ECF No. 51, at ¶¶ 1, 2). The Affidavit of Jennifer Johnston submitted by the Just Energy Defendants in support of summary judgment clarifies that Defendant Just Energy Pennsylvania Corp. is a Delaware corporation with a principal place of business in Pennsylvania. (ECF 60-1, at ¶ 7). Thus, the parties are not completely diverse as required for diversity jurisdiction. 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business."); Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Management, Inc., 316 F.3d 408, 410 (3d Cir. 2003) ("Jurisdiction under 28 U.S.C. § 1332(a)(1) . . . requires complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants.")

Defendants Collectcents and Data Exchange were added to the case relatively recently by the filing of the second amended complaint. (ECF No. 51). A motion to dismiss by defendant Data Exchange is now pending (ECF No. 77), defendant Collectcents just filed its answer on

June 21, 2016, (ECF No. 85), and the discovery deadline regarding the claims against defendants Collectcents and Data Exchange has not been set. Thus, the case against Data Exchange and Collectcents is procedurally in the earlier stage. The case has proceeded through discovery, however, regarding the claims against the Just Energy Defendants and the state law claims have been fully litigated on the Just Energy Defendants' summary judgment motion. The vicarious liability claims against the Just Energy Defendants in Count VI are intertwined with the remaining claims against defendants Collectcents and Data Exchange because Count VI is premised on liability of Collectcents and Data Exchange for their alleged negligent conduct.

More importantly, the Just Energy Defendants are entitled to summary judgment on the claims for invasion of privacy, negligence and vicarious liability regarding the challenged calls for the very same reason that summary judgment will be granted on the TCPA claim, namely that there is no connection between these entitles and the challenged calls. Assuming Klein can otherwise establish a claim for invasion of privacy, which requires an intentional rather than accidental invasion, O'Donnell v. United States, 891 F.2d 1079, 1083 (3d Cir. 1989), Klein has failed to adduce evidence connecting the calls to the Just Energy Defendants. Klein's negligence claim[12] requires that he show the Just Energy Defendants owed him a duty and breached that duty, Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir. 1993), which Klein

---

[12] The court dismissed Klein's claim for negligence against the Just Energy Defendants in his original complaint because Klein failed to make any factual allegations a) that would be sufficient to plausibly implicate any of the four scenarios for recovery of emotional distress; and b) that he suffered physical manifestation of his emotional distress. (ECF No. 21 at 9). Although Klein's second amended complaint alleges that he suffered physical manifestation of emotional distress, (ECF No. 51 ¶ 39), as with the original complaint addressed in the court's prior opinion, (ECF 21 at 8-9), Klein failed to adduce sufficient evidence to support any of the four factual scenarios required under Pennsylvania law. Daly v. New Century Trans, Inc., No. 11-2037, 2012 WL 4060687, at *7 (M.D. Pa. Sept. 14, 2012) (citing Toney v. Chester Cnty. Hosp., 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008)). Klein did not allege any of the four factual scenarios required for negligent infliction of emotional distress or adduce sufficient evidence for purposes of summary judgment. On this basis alone the Just Energy Defendants are entitled to summary judgment on the count for negligence and the count for vicarious liability of the Just Energy Defendants for the alleged negligence of defendants Collectcents and Data Exchange/QRO.

cannot show because of the lack of connection of the Just Energy Defendants to the challenged calls. Finally, without ruling on the pending claims for negligence against defendants Collectcents and Data Exchange, the court observes that Klein must adduce sufficient evidence of a connection of the Just Energy Defendants to the challenged calls and to the conduct of defendants Collectcent and Data Exchange in order to hold the Just Energy Defendants vicariously liable, which he failed to do on this record. In this posture, the considerations of judicial economy, convenience, fairness and comity, weigh in favor of supplemental jurisdiction regarding the state law claims against the Just Energy Defendants. <u>Cindrich v. Fisher</u>, 341 F.App'x 780, 790 (3d Cir. 2009). Accordingly, supplemental jurisdiction over these claims will be exercised and summary judgment will be entered in favor of Just Energy Defendants on the state law claims in Counts II, IV and VI because no reasonable jury could render a verdict in favor of Klein and against the Just Energy Defendants on these claims.

### C.  Possible Amendment in Response to Motion for Summary Judgment

Perhaps recognizing the lack of evidentiary connection between the Just Energy Defendants and the challenged calls, Klein states in a footnote in his opposition that "[t]o the extent necessary, Plaintiff intends to request leave of Court to add 'Commerce Energy, Inc. d/b/a Just Energy' as a named Defendant and also to explore the dismissal of some of the existing named Just Energy Defendants, if appropriate." (ECF 62 at 5 n.1). A contention in a brief does not substitute for sufficient evidence justifying denial of summary judgment. Cf <u>United States ex rel. Zizic v. Q2Administrators, LLC</u>, 728 F.3d 228, 243 (3d Cir. 2013)(bare request in opposition to motion to dismiss insufficient); <u>Kowal v. MCI Commc'ns Corp.</u>, 16 F.3d 1271, 1280 (D.C. Cir. 1994) ("bare request in an opposition to a motion to dismiss—without any

indication of the particular grounds on which amendment is sought…—does not constitute a motion within the contemplation of rule 15(a)."); <u>Williams v. New Castle County</u>, 970 F.2d 1260, 1266 n. 4 (3d Cir. 1992); <u>Zampogna v. Sheriff of Westmoreland County</u>, *PA*, Civ. A. No. 13-233, 2013 WL 1909146, at *1 (W.D. Pa. May 8, 2013).  Even if a motion or proposed amendment may be forthcoming as suggested, it does not forestall summary judgment in favor of the Just Energy Defendants on the TCPA claim. <u>See</u> <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 252 (3d Cir. 2007) (request for leave to amend without submitting a draft amended complaint is fatal to the request).  The Motion for Summary Judgment was filed on February 26, 2016, Klein has filed a response in opposition, the Just Energy Defendants have filed their Reply, and the issue has been joined.  Klein's '"just you wait and see" approach will not be countenanced at this juncture.  *See* F_{ED}. R. C_{IV}. P. 1 (2015) (The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'" <u>Lee v. Sixth Mount Zion Baptist Church of Pittsburg</u>, Civ. Act. No. 15-1599, 2016 WL 2344529, at *6 (W.D. Pa. May 4, 2016) (denying informal and unsupported request for leave to amend).

If Klein intends to file a motion to amend referred to, he will be required to satisfy Federal Rule of Civil Procedure 15 or 16, as applicable, regarding any such motion. <u>See</u> <u>Alston v. Parker</u>, 363 F.2d 229, 235 (3d Cir. 2004).

As a result of the lack of evidence showing a connection between any of the Just Energy Defendants to the calls, the Just Energy Defendants are entitled to summary judgment with respect to Klein's state law claims against them.

## VI.    CONCLUSION

Viewing the evidence in the light most favorable to Klein, the court concludes that Klein failed to adduce sufficient evidence for a reasonable jury to find that any of the Just Energy Defendants either made the calls, that any of the calls were made on their behalf, or that they had any relevant connection to the calls.   On this record a reasonable factfinder could not find the Just Energy Defendants liable on Klein's claims against them for violation of the TCPA, invasion of privacy, negligence or vicarious liability for the negligence of Collectcents and Data Exchange.   The Just Energy Defendants' motion for summary judgment on Counts I, II, IV and VI will be granted.    Judgment will be entered against Klein and in favor of the Just Energy Defendants on all counts against them.

An appropriate order follows.

By the court:

Dated:  June 29, 2016                /s/ Joy Flowers Conti
                                     Joy Flowers Conti
                                     Chief United States District Judge