IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY FRANK KLEIN, | Case No. 14-1050 |
| Plaintiff, | Hon. Joy Flowers Conti |
| | Jury Trial Demanded |
| v. | |
| COMMERCE ENERGY, INC. D/B/A JUST ENERGY, a California Corporation, and COLLECTCENTS, INC. o/a CREDIT BUREAU OF CANADA COLLECTIONS, a Foreign Corporation, | |
| Defendants. | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT COMMERCE ENERGY, INC. D/B/A JUST ENERGY'S MOTION FOR SUMMARY JUDGMENT

Date: January 11, 2017

Adam G. Vahanian, Esquire
Attorney for Jeffrey Frank Klein, Plaintiff
PA I.D. #209605
The Chiurazzi Law Group
101 Smithfield Street
Pittsburgh, PA 15222
avahanian@the-attorneys.com
(412) 434-0773
(412) 434-0776 – Fax

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEFFREY FRANK KLEIN,　　　　　　　　　Case No. 14-1050

　　　　Plaintiff,　　　　　　　　　　　　　Hon. Joy Flowers Conti

v.

COMMERCE ENERGY, INC. D/B/A
JUST ENERGY, a California
Corporation, and COLLECTCENTS,
INC. o/a CREDIT BUREAU OF
CANADA COLLECTIONS, a Foreign
Corporation,

　　　　Defendants.

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT COMMERCE ENERGY, INC. D/B/A JUST ENERGY'S MOTION FOR SUMMARY JUDGMENT

AND NOW, comes the Plaintiff, Jeffrey Frank Klein ("Plaintiff" or "Klein") and files the following Brief in Opposition to Motion for Summary Judgment, stating as follows:

## ARGUMENT

### A. Charges for calls and applicability of TCPA to VoIP service

Plaintiff claims that Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii), which provides that it shall be unlawful to use an automatic telephone dialing system to make calls "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, *or any service for which the called party is charged for the call.*" (emphasis added). While there is a dearth of case law in the Third Circuit on the "charged-call" provision of the TCPA, some courts have concluded that the phrase "for which the called party is charged for the call" only modifies the phrase "any service" and that therefore the TCPA is violated even if the called party does not incur a charge that is specifically linked to the automated call.

Lozano v. Twentieth Century Fox Film Corp., 702 F. Supp. 2d 999, 1009–10 (N.D. Ill. 2010). The TCPA statute, read as a whole, supports this conclusion. See Abbas v. Selling Source, LLC, No. 09-3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009). Congress amended the TCPA in 1992 to provide that the Federal Communications Commission ("FCC") may issue rules or orders that "exempt . . . calls to a telephone number assigned to a cellular telephone service that are not charged to the called party." See 47 U.S.C. § 227(b)(2)(C). If the TCPA only prohibited calls to numbers that result in a charge to the called party, then it would be unnecessary to create exemptions for uncharged calls. Abbas, 2009 WL 4884471, at *3. "Courts avoid such ineffective statutory construction." Id. (citing In re Merchants Grain, Inc., 93 F.3d 1347, 1353–54 (7th Cir. 1996)). The plain language of the TCPA statute supports Plaintiffs' position that an automated call is prohibited by the TCPA even if the called party does not incur a charge that is specifically linked to that call.

More recently, the Court of Appeals for the Eleventh Circuit, in Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242 (11th Cir. Fla. 2014), addressed the issue of whether the called party must be charged for the call. The Eleventh Circuit included a detailed discussion of the charge requirement and statutory construction of the TCPA. The Court in Osario concluded at p. 1258 that "the phrase 'for which the called party is charged for the call modifies only 'any service' and not the other terms of the series."

Calls made to a VoIP number with limited minutes/data should be treated the same as calls to a cellphone under the TCPA. Plaintiff subscribes to a VoIP service from Google and has a Verizon cellular telephone plan which allows him a set number of minutes and data per month which he cannot exceed without accruing additional

charges. See Plaintiff's Appendix No. 2, page 1 "Use of Carrier Minutes," Plaintiff's Appendix 3, page 1, showing Google VoIP linked to Verizon mobile number, and Appendix 4, showing Verizon plan indicating finite number of minutes and minute usage associated with voicemails received. There is little guidance in the Third Circuit on the issue of whether a VoIP alters the nature of the receiving telephone under the TCPA. However, a recent Fourth Circuit decision is instructive.

In Lynn v. Monarch Recovery Management, 953 F.Supp. 2d 612(4th Cir. 2013), the Fourth Circuit addressed the issue and affirmed the district court's application of the TCPA to a call to a VoIP residential line. The VoIP service utilized in that case charged plaintiff a set amount per call and connected to Plaintiff's residential line. Lynn, 953 F. Supp. 2d at 625. The Fourth Circuit held that because plaintiff was charged for each of the defendant's calls, the calls were made "to a service for which the party is charged for the call," and a "residential phone line." Id. The panel rejected the debt collector's argument that there was no evidence that the two provisions were mutually exclusive or that the latter trumped the former. Id. It noted that its holding aligned with Congress's intent that automated calls add expense to annoyance. Id. At 625 & n.38 (citing § 227(b)(1)(A)(iii).

The Fourth Circuit's reasoning is applicable here. Plaintiff's VoIP service is not an unlimited calls/flat fee plan (See Plaintiff's Appendix No. 2 and No. 4) as is generally presumed to be the case with a traditional residential phone line. See In the Matter of Rules and Regs. Implementing the TCPA of 1991, 27 FCC Red 1830, 1839-40 (2012) (explaining that the "unique protections for wireless consumers in the TCPA" are due in part because "the costs of receiving [the calls] often rests with the wireless subscriber").

Rather, it is a "service for which the party is charged for the call" described under § 227(b)(1)(A)(iii) because each call by defendants depletes plaintiff's store of limited minutes. See Id. (noting that the TCPA seeks to avoid costs in the form of deductions from a "bucket of minutes"); Thomas v. Dun & Bradstreet Credibility Corp., No. cv 15-03194, 2015 U.S. Dist. LEXIS 103322, at *22 (C.D. Cal. Aug. 5, 2015) (finding that defendant's calls depleted allocated minutes of fixed-minute plan and constituted economic loss to account holder); Tel. Sci Corp. v. Trading Advantage, LLC, No. 14 C 4369, 2015 U.S. Dist. LEXIS 18591, at *2-3 (N.D. Ill. Feb 17, 2015) (finding that plaintiff stated a claim under TCPA because defendant's calls to VoIP service connected to a residential line was a service for which the party is charged for the call). There is no regulatory exemption to this provision because the TCPA permits the FCC to create limited exemptions only to the prohibition of calls to certain cell phones (under subsection (A)) and to residential lines (under subsection (B)). See § 227(b)(1)(B), (C). Accordingly, Defendant's calls to Klein's VoIP violated the TCPA.

### B. Plaintiff alleges sufficient facts to support a claim for intrusion upon seclusion

A claim for intrusion upon seclusion requires a showing of "conduct demonstrating 'an intentional intrusion upon the seclusion of [a plaintiff's] private concerns which was substantial and highly offensive to a reasonable person, and [must] aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities.'" Boring v. Google Inc., 362 Fed. Appx. 273, 278-79 (3d Cir. 2010) (quoting Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 247 (Pa. 2002)).

Pennsylvania has adopted the definition of intrusion upon seclusion as set out in

Restatement (Second) of Torts, § 652B. Larsen v. Phila. Newspapers, Inc., 543 A.2d 1181, 1187 (Pa. Super. Ct. 1988). Under this definition and in the context of the instant matter, there is no liability for a person who demands payment of a debt unless "the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that [it] becomes a substantial burden to his existence, that his privacy is invaded." Restatement (Second) of Torts, § 652B cmt. d (emphasis added).

Plaintiff alleges sufficient facts to support a claim for intrusion upon seclusion under Pennsylvania law. See Desmond v. Phillips & Cohen Assoc., Ltd., 724 F. Supp. 2d 562, 568 (W.D. Pa. 2010) (allowing intrusion upon seclusion claim to go to the jury based on debt collector's fourteen calls, four letters, and several messages left on the plaintiff's answering machine)[1]. Furthermore, Defendant's contention that the calls were not "intentional" is without merit. The Third Circuit Court of Appeals has concluded "that an actor commits an intentional intrusion if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act. [The Court] emphasize[s] that the intrusion, as well as the action, must be intentional." O'Donnell v. U.S., 891 F.2d 1079, 1083 (3d Cir.1989). Here, Plaintiff alleges that Defendants called Plaintiff on 200+ occasions. It is not disputed that at least 90 such calls were made to Plaintiff. (ECF Nos. 58 at 12; 60-6). Plaintiff also alleges that these

---

[1] For other cases recognizing intrusion upon seclusion for telephone calls, see Diaz v. D.L. Recovery Corp., 2007 U.S. Dist. LEXIS 31241 (E.D. PA. 2007), Joseph v. J. J. Mac Intyre Companies, 281 F. Supp. 2d 1156, 1169 (N.D. Cal. 2002), Sanchez v. Client Services, Inc., 520 F. Supp. 2d 1149 (N.D. Cal. 2007), Lowe v. Surpas, 253 F. Supp. 2d 1209 (D. Kan. 2003), Burkhalter v. Lindquist and Trudeau, Inc., 2005 U.S. Dist. LEXIS 23582, *6 (E.D. MO 2005), and Jones v. U.S. Child Support Recovery, 961 F. Supp. 1518, 1521 (D. Utah 1997).

calls persisted even after Defendants were advised that they had the wrong number and demanded that they cease calling him. (ECF No. 95 Count I, ¶ 30-32, Plaintiff's Appendix 5, answer to interrogatory number 5). These allegations are sufficient to support a claim for intrusion upon seclusion. Defendant's actions were "intentional" in that Defendants, after being put on notice that they lacked personal permission to commit the intrusive calls, continued the calls despite Plaintiff's demands that they cease and desist.

### C. Plaintiff's common law claims are not time-barred

Defendants move for summary judgment on the basis that Plaintiff's common law claims are time-barred. Plaintiff asserts the discovery rule applies to toll his common law claims. The Supreme Court of Pennsylvania has stated that the discovery rule "arises from the inability of the injured, despite the exercise of due diligence, to know of the injury, or its cause." Pocono International Raceway v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983). "Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, *a jury is to decide it*." Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005) (emphasis added).

Plaintiff filed his Complaint in August, 2014, against four "Just Energy" entities, "Just Energy Group, Inc.," "Just Energy Limited," "Just Energy Pennsylvania Corp." and "Just Energy Ohio, LLC." The statute of limitations should be tolled under the discovery rule, because at the time of filing the Complaint he did not know "Commerce Energy d/b/a Just Energy" was the "Just Energy" entity associated with the Phyliss Settles account, or that the offending calls were made on behalf of "Commerce Energy d/b/a

Just Energy" by Defendant "CollectCents, Inc. o/a Credit Bureau of Canada Collections." Here, it is undisputed that during the course of its phone calls to Plaintiff, CollectCents identified itself as "Just Energy," "Just Energy Ohio" or some variation thereof. See Plaintiff's Appendix No. 1 (and the jump drive containing audio recordings delivered to the Court pursuant to the Court's May 11, 2016 Order) and No. 3. Thus, the Defendants, by and through their agents, actively concealed their true identities, preventing Plaintiff the ability to identify the correct entities at the time he filed his Complaint. Accordingly, the discovery rule applies to toll his common law claims against both Defendants.

### D. Defendant's owe Plaintiff a duty of care

Defendants argue Plaintiff has failed to establish Defendants owed him a duty of care, and thus his negligence claims are legally insufficient. Although the common law ordinarily imposes no duty to act, an affirmative legal duty may arise from statute. Under Pennsylvania law, "[t]he concept of negligence per se establishes both duty and the required breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm." Cabiroy v. Scipione, 767 A.2d 1078, 1079 (Pa. Super. Ct. 2001). Here, the TCPA, the purpose of which statute is to protect persons such as Plaintiff from unwanted and harassing communications, forms the basis of Plaintiff's claims. Furthermore, Plaintiff has established that he was injured as a result of the Defendant's conduct. See Plaintiff's Appendix 6, comprised of Plaintiff's therapy records substantiating Plaintiff's claims of mental/physical injury in the form of physical manifestations of anxiety related to the subject calls.

### E. Vicarious liability and agency principals extend liability to Defendant Commerce Energy Inc., d/b/a Just Energy

### 1. Liability under § 227(c) extends to the entities on whose behalf an illegal debt collection call is made

The Just Energy Defendants' liability under the TCPA does not depend on whether it physically placed illegal debt collection calls to the Plaintiff. It is sufficient that another party placed the calls on The Just Energy Defendant's behalf, as CollectCents has done here. Just Energy Defendants' argument is legally incorrect. When Congress enacted the TCPA, it anticipated that creative defendants would attempt to evade liability by using third parties to engage in illegal calling for them. Therefore, TCPA liability extends not only to the entity that physically placed the calls, but also to the entity that benefits from the call. Specifically, the provision that establishes a private right of action against an entity that violates the do not call restrictions provides:

> A person who has received more than one telephone call within any 12-month period **by or on behalf** of the same entity in violation of the regulations prescribed under this subsection may…bring in an appropriate court…(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions.

47 U.S.C § 227(c)(5)(emphasis added).

As admitted by The Just Energy Defendants' motion for summary judgment, (Def.s' Summ. J. 2 ¶6), the collection calls to Plaintiff were made by CollectCents "on behalf of" Just Energy entities. When a call is made "on behalf of" a particular entity there should be no requirement, as The Just Energy Defendants contend, of proof of an agency relationship.

The Federal Communications Commission ("FCC") has recognized as much. Over the course of the twenty years following the TCPA's enactment, the FCC

repeatedly has made clear that the TCPA's broad restrictions on various forms of telephone communications cannot be evaded simply by employing third parties to physically transmit illegal calls. On this point, the FCC has stated:

> We take this opportunity to reiterate that a company on whose behalf a telephone solicitation is made bears the responsibility for *any* violation of our telemarketing rules, and calls placed by a third party on behalf of that company *are treated as if the company itself placed the call*.

In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of State Farm Mutual Auto Ins. Co. for Clarification and Declaratory Ruling, GC Docket No. 02-278, 20 F.C.C.R. 13664 at ¶ 7 (Aug. 17, 2005) (emphasis added); see also, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA Int'l for Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶ 10 (Jan. 4, 2008) (recognizing "on behalf of" liability in the context of robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)); In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum Opinion and Order, 10 F.C.C.R. 12391 at ¶ 13 (Aug. 7, 1995) ("Our rules generally establish that a party on whose behalf a solicitation is made bears ultimate responsibility for any violations.").[2]

---

[2] In this regard, the TCPA "is a strict liability statute." CE Design Ltd. v. Prism Bus. Media, Inc., No. 07-c-5838, 2009 WL 2496568, at *3 (N.D.Ill. Aug. 12, 2009); see also Penzer v. Transp. Ins. Co., 545 F.3d 1303, 1311 (11th Cir. 2008) ("Numerous courts have determined that the TCP A does not require intent[.]"); Accounting Outsourcing, LLC. v. Verizon Wireless Personal Commc'ns, L.P., 329 F. Supp. 2d 789, 818 (M.D. La. 2004) ("the TCPA ... impose[s] strict liability for [its] civil damages provisions"); Park Univ. Enters., Inc. v.Am. Cas. Co. o/Reading, PA, 314 F. Supp. 2d 1094,1103 (D. Kan. 2004) ("The TCPA is essentially a strict liability statute[.]...); affd. 442 F.2d 1239 (10th Cir.2006).

Further, the United States District Court for the Middle District of Pennsylvania has established that "on behalf of" liability extends to those who stand to benefit. In Hartley–Culp v. Credit Mgmt. Co., No. 14–0282, 2014 WL 4630852, at *2 (M.D.Pa. Sept. 15, 2014), the Court denied the Defendant Fannie Mae's Motion to Dismiss a TCPA claim. In that case, Fannie Mae argued that it cannot be held directly liable under the TCPA because it did not initiate the calls in question. Furthermore, it argued that the Plaintiff did not sufficiently plead an allegation of vicarious liability. To support its argument that the TCPA only imposes liability on those who actually place the calls in question, Fannie Mae cited to Mais v. Gulf Coast Collection Bureau, 944 F. Supp. 2d 1226 (S.D. Fla. 2013), which held that a creditor cannot be held vicarious liable for TCPA violations committed by a third party. The Court disagreed, citing a 2007 FCC Order for the proposition that "calls placed by a third party collector on behalf of [a] creditor are treated as if the creditor itself placed the call."

A contrary rule would eviscerate the consumer privacy protections afforded by the TCPA. For good reason, Congress expressly extended the private right of action not only to entities that themselves violate the law, but also to entity on whose behalf the violations occurred. Applying the unambiguous terms of the statute and the everyday meaning of the terms used therein, and buttressed by the FCC's longstanding application and interpretation of the statute, as well as the Hartley–Culp ruling, it is clear that The Just Energy Defendants are not entitled to summary judgment with respect to the calls placed by CollectCents.

## 2. Under federal common law principles of agency, The Just Energy Defendants are vicariously liable for the subject calls to Plaintiff

The FCC is expressly granted the authority to "prescribe regulations to implement the requirements" of the TCPA. 47 U.S.C. § 227(b)(2). On May 9, 2013, the FCC issued a Declaratory Ruling, which addressed whether and when the TCPA contemplates indirect liability by a seller for unlawful calls made by an independent telemarketer. In issuing said Declaratory Ruling, the FCC held that a seller "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." In the Matter of The Joint Petition Filed by Dish Network, LLC, et al., CG Docket No. 11-50 (FCC 13-54), 28 FCC Rcd 6574, 6582 ¶ 24 (2013) ("2013 FCC Ruling"). In the 2013 FFC Ruling, the FCC stated that:

> allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States

2013 FCC Ruling at 6588 ¶ 37.

Recognizing that "the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers[,]" the FCC concluded that "potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with [the FCC's] rules." Id.

The 2013 FCC Ruling elaborates on the issue of agency liability under the TCPA by stating that "a seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, ***but also principles of apparent authority and ratification***." Id. at 6584 ¶ 28 (emphasis added). In

considering the issue of vicarious liability under the TCPA, the 9th Circuit echoed the FCC's ruling in stating that the TCPA "is silent as to vicarious liability. We therefore assume that Congress intended to incorporate 'ordinary tort-related vicarious liability rules.'" Gomez v. Campbell-Ewald Co., 768 F.3d 871, 877 (9th Cir. Cal. 2014) citing Meyer v. Holley, 537 U.S. 280, 285 (2003).

### a. Apparent authority

"Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement 3d of Agency, § 2.03. "Apparent authority exists where the principal, **by words or conduct**, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he purports to exercise." (emphasis added) Richardson v. John F. Kennedy Mem'l Hosp., 838 F. Supp. 979, 985 (E.D. Pa. 1993) (citing Volunteer Fire Co. v. Hilltop Oil Co., 602 A.2d 1348, 1351-52 (Pa. Super. 1992)).

In order to reach a finding of apparent authority on the part of the Just Energy Defendants, the Court need not find that The Just Energy Defendants themselves directly communicated with Plaintiff.

> A Principal may make manifestations regarding an agent's authority in many ways. In some settings, the principal's acts speak so loudly that explicit verbal communication is unnecessary. Similarly, an *indirect route of communication between a principal and third party may suffice*, especially when it is consistent with practice in the relevant industry.
> ...
> A principal may also make a manifestation by placing an agent in a defined position in an organization or by placing an agent in charge of a transaction or situation. Third parties who interact with the principal through the agent will

naturally and reasonably assume that the agent has authority to do acts consistent with the agent's position or role unless they have notice of facts suggesting that this may not be so. Id. (emphasis added)

Additionally:

If a principal has given an agent general authority to engage in a class of transactions, subject to limits known only to the agent and the principal, third parties may reasonably believe the agent to be authorized to conduct such transactions and need not inquire into the existence of undisclosed limits on the agent's authority.

Id.

In delineating when apparent authority can be found so as to result in vicarious liability under the TCPA on the part of an entity for the conduct of its debt collectors, the 2013 FCC Ruling listed five different factors that can be an indication of apparent authority. Id. at 6592. One of said factors is the granting of "the authority to use the seller's trade name, trademark and service mark . . ." Id. at 6592. Here, it is undisputed that during the course of its phone calls to Plaintiff, CollectCents identified itself to Plaintiff as "Just Energy" or "Just Energy Ohio." Plaintiff has produced through discovery numerous MP3 format audio recordings where the CollectCents caller identifies himself or herself as "Just Energy Ohio." See Plaintiff's Appendix No. 1. From this fact it can be justifiably inferred that The Just Energy Defendants granted the right or were at least aware that CollectCents callers identified themselves to creditors as "Just Energy" to call recipients.

Thus, based upon the 2013 FCC Ruling, it is clear that by virtue of allowing CollectCents to refer to themselves as "Just Energy," The Just Energy Defendants exercised apparent authority over Collectcents in CollectCents' action in placing the calls to Plaintiff that are the subject of this action.

### b. Ratification

> (1) Ratification is the affirmation of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.
> (2) A person ratifies an act by
> (a) manifesting assent that the act shall affect the person's legal relations, or
> (b) conduct that justifies a reasonable assumption that the person so consents.

Restatement 3d of Agency, § 4.01

"[K]nowing acceptance of the benefit of a transaction ratifies the act of entering into the transaction. This is so even though the person also manifests dissent to becoming bound by the act's legal consequences." Id., Comment d., ¶ 2. As discussed above, while The Just Energy Defendants may not themselves have directly engaged in the initiation of the telephone calls that are the subject of Plaintiff's claims, The Just Energy Defendants directly benefited from the calls by virtue of the fact that the calls presumably allowed The Just Energy Defendants to collect money owed to them.

Finally, it should be noted that the issue whether an agency relationship exists is decided from the facts of each case. Exact Precision, Inc. v. Accura Zeisel Machinery Corp, No. 98-4168, 1999 WL 1197899, at **2-3 (E.D. Pa. 1999). Given the factual nature of the agency inquiry, the existence of an agency relationship is generally a question that should be decided by a jury. Id.

Respectfully Submitted,

s/ Adam G. Vahanian
Adam G. Vahanian, Esquire
Attorney for Jeffrey Frank Klein, Plaintiff
PA I.D. #209605
The Chiurazzi Law Group
101 Smithfield Street
Pittsburgh, PA 15222
avahanian@the-attorneys.com
(412) 434-0773
(412) 434-0776 – Fax