**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEFFREY FRANK KLEIN,            ) | |
|                                ) | |
|         Plaintiff,         ) | |
|                                ) | |
|         v.            ) | Civil Action No. 14-1050 |
|                                ) | |
| COMMERCE ENERGY, INC., d/b/a JUST  ) | |
| ENERGY, a California Corporation, and   ) | |
| COLLECTCENTS, INC., o/a CREDIT     ) | |
| BUREAU OF CANADA, a Foreign       ) | |
| Corporation,                     ) | |
|                                ) | |
|         Defendants.       ) | |
|                                ) | |

**OPINION**

**CONTI, Chief District Judge**

## I.   INTRODUCTION

Pending before the court are the motion for summary judgment (ECF No.113) filed on behalf of defendant Collectcents, Inc., o/a Credit Bureau of Canada Collections ("Collectcents") and the motion for summary judgment (ECF No. 119) filed on behalf of defendant Commerce Energy, Inc. d/b/a Just Energy ("Commerce Energy"). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. In his third amended complaint (ECF No. 95), plaintiff Jeffrey Frank Klein ("Klein") claims that numerous telephone calls made to him by Collectcents on behalf of Commerce Energy violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq.*, and constituted negligence and invasion of privacy under Pennsylvania law. Specifically, Klein sues Collectcents for: a) violation of the TCPA (Count I); b) common law

1

invasion of privacy under intrusion upon seclusion theory (Count II); and c) negligence (Count III). Klein sues Commerce Energy for: a) violation of the TCPA (Count IV); and b) "vicarious liability" for violation of the TCPA and invasion of privacy by Collectcents (Count V). By order dated November 18, 2016, (ECF No. 111), and as indicated in the court's memorandum opinion issued with respect to Commerce Energy's partial motion to dismiss the third amended complaint, the negligence claims against Commerce Energy, directly and vicariously, under Counts V and VI of the third amended complaint were dismissed. Klein v. Just Energy Group, Inc., Civ. Act. No. 14-1050, 2016 WL 6822810, at *5 (W.D. Pa. Nov. 18, 2016).

In support of their present motions for summary judgment, Collectcents filed its brief in support of its motion, (ECF No. 114), its concise statement of material facts, (ECF No. 115), an appendix, (ECF No. 116), a reply brief, (ECF No. 134), and a reply concise statement of material facts, (ECF No. 135), and Commerce Energy filed its brief in support of its motion, (ECF No. 120), its concise statement of material facts, (ECF No. 121), an appendix, (ECF No. 122), a reply brief, (ECF No. 136), and a reply concise statement of material facts. (ECF No. 137). Klein filed a response in opposition to Collectcents' motion (ECF No. 125), a response to Collectcents' concise statement of material facts (ECF No. 129), a response in opposition to Commerce Energy's motion (ECF No. 124), and a response to Commerce Energy's concise statement of material facts. (ECF No. 128). In accordance with this court's procedures, Klein and Collectcents filed a Combined Concise Statement of Material Facts ("Collectcents CCSMF") (ECF No. 140) and Klein and Commerce Energy filed a Combined Concise Statement of Material Facts ("Commerce Energy CCSMF"). (ECF No. 141). The Combined Concise Statement of Material Facts filed by Collectcents and the Combined Concise Statement of

Material Facts filed by Commerce Energy indicate uncontested facts, disputes about certain facts and disputes about whether the responses of Klein to certain of the facts asserted by Collectcents and Commerce Energy in their respective Concise Statements of Material Facts are adequate to dispute those facts under the Local Rules of the United States District Court for the Western District of Pennsylvania and the Chambers' Rule of this court. See e.g., (ECF No. 140 at 8 (citing LCvR 56.E and this court's Chambers' Rule 3.F.c.ii)); (ECF No. 141 at 10 (citing LCvR 56.C.1.a and this court's Chambers' Rule 3.F.c.ii)). These motions are fully briefed and ripe for disposition. Because Klein cannot show that he was charged for any of the calls, because his claims for invasion of privacy are untimely, and because Klein's claims do not fall within the four scenarios for negligence causing emotional distress, as more fully explained below, summary judgment will be granted in favor of Collectcents and Commerce Energy with respect to all claims remaining against them.

## II. <u>PROCEDURAL BACKGROUND</u>

On August 13, 2014, this court granted plaintiff, who was proceeding *pro se* at that time, leave to proceed *in forma pauperis*. Klein's original complaint sued Just Energy Group, Inc., Just Energy Limited, Just Energy Pennsylvania Corp., and Just Energy Ohio, LLC (collectively, the "Just Energy Defendants"). The Just Energy Defendants responded to the *pro se* complaint by filing a partial motion to dismiss the complaint, seeking dismissal of claims for private nuisance and negligence for failure to state a claim. (ECF No. 17). By order dated May 27, 2015, this court granted Just Energy Defendants' motion to dismiss the counts for private nuisance and negligence without prejudice. (ECF No. 22). The court determined in its accompanying

memorandum opinion that Pennsylvania does not recognize private nuisance claims outside the land context, and that, with respect to the negligence claim, Klein failed to set forth sufficient factual allegations to invoke any of the four scenarios under which a claim for negligent infliction of emotional distress can proceed under Pennsylvania law and also failed to allege the required physical manifestation of his emotional distress. (ECF Nos. 21 at 8-9). In the May 27, 2015 order, this court granted Klein leave to file an amended complaint. Klein, who was still proceeding *pro se*, filed the amended complaint on June 12, 2015. (ECF No. 24). The amended complaint contained claims against the Just Energy Defendants for violation of the TCPA, invasion of privacy under intrusion upon seclusion theory, and negligence.

On November 16, 2015, counsel for Klein entered his appearance and Klein no longer proceeded *pro se.* (ECF No. 42). On January 20, 2016, with leave of court requested on January 8, 2016, Klein through his counsel filed a second amended complaint and added Collectcents and Data Exchange, Inc. as defendants to this action. (ECF Nos. 48, 51; (Minute Entry 1/19/16)). The Just Energy Defendants filed their answer to the second amended complaint on January 26, 2016. (ECF No. 52). After filing that answer and concluding discovery, on February 26, 2016, the Just Energy Defendants filed a motion for summary judgment. (ECF No. 57). Defendant Data Exchange responded to the second amended complaint on May 17, 2016 by filing a motion to dismiss for lack of personal jurisdiction (ECF No. 75) and a motion to dismiss for failure to state a claim. (ECF No. 77). Defendant Collectcents responded to the second amended complaint by filing its answer on June 21, 2016. (ECF No. 85). By order dated June 29, 2016, the court granted the Just Energy Defendants' motion for summary judgment. (ECF No. 87).

Klein filed a motion for leave to file a third amended complaint on July 7, 2016 (ECF No.

88), seeking to add Commerce Energy as a defendant to this action and to assert claims against Collectcents, Data Exchange, Commerce Energy and Just Energy Group, Inc., despite the fact that Just Energy Group, Inc. had obtained summary judgment. After argument on the pending motions to dismiss and for leave to amend, the court granted Data Exchange's motion to dismiss for lack of personal jurisdiction, which was consented to by Klein, denied as moot Data Exchange's motion to dismiss for failure to state a claim, and granted in part and denied in part Klein's motion for leave to file a third amended complaint. (Minute Entry 9/7/2016). Klein was not granted leave to file any further claims against Just Energy Group, Inc. (Minute Entry 9/7/2016). Klein filed his third amended complaint on September 8, 2016 (ECF No. 95), which contained only claims against Collectcents and Commerce Energy. Commerce Energy responded to the third amended complaint on September 23, 2016 by filing a motion to dismiss the claims against it based on negligence, including the claim for vicarious liability for the negligence of Collectcents. (ECF No. 96). Collectcents responded to the third amended complaint with its answer and affirmative defenses on September 26, 2016. (ECF No. 100).

By order dated November 18, 2016, the court granted Commerce Energy's motion to dismiss the claims against it for negligence and vicarious liability for negligence. (ECF No. 111). Thus, remaining in this action are: the claims against Collectcents for violation of the TCPA, invasion of privacy, and negligence; and the claims against Commerce Energy for its violation of the TCPA and for its vicarious liability for the violation of the TCPA and invasion of privacy by Collectcents. Collectcents filed its motion for summary judgment on November 21, 2016. (ECF No. 113). Commerce Energy filed its answer to the remaining claims against it on November 30, 2016, and filed its motion for summary judgment on December 12, 2016. (ECF No. 119).

## III.    FACTUAL BACKGROUND[1]

At the outset, the court is constrained, again,[2] to address certain issues about the filings with respect to the statements of material facts required for filing and responding to a motion for summary judgment. Collectcents and Commerce Energy each filed their Concise Statement of Material Facts in accordance with Local Rule 56.B.1. (ECF Nos. 115, 121). In response to each Concise Statement of Material Facts, Klein filed his Response Concise Statements of Material Facts. (ECF Nos. 128, 129). With respect to Collectcents' statement of facts, Klein indicates that he denies the facts numbered 28, 30, 31, 32, 33, 34, 35, and 36. (ECF No. 129). With respect to the facts numbered 28, 34, 35, and 36, he states that he denies the fact and in support only cites to his third amended complaint as opposed to any evidence in the record or admission by pleading of Collectcents. With respect to the facts numbered 30, 31, 32, and 33, Klein denies each fact and cites only to Section A of his opposition brief addressing his argument that the TCPA applies to calls made to his free Google voice over Internet Protocol ("VoIP") service number ending in 0702 ("Klein's VoIP number"). With respect to Commerce Energy's statement of facts, Klein indicates that he denies the facts numbered 48, 49, 50, 51, 52, 53, and 54, and admits in part and denies in part the facts numbered 34 and 41 (ECF No. 128). With respect to the facts numbered 48, 49, 50, and 51, he denies each fact and cites only to the argument in Section A of his opposition brief addressing the application of the TCPA to VoIP.

---

[1] The factual background is taken from the undisputed evidence of record, including the parties' Combined Statement of Material Facts, which synthesizes each defendant's Concise Statement of Material Facts with Klein's response stated in his opposition; evidence not properly disputed on the record; and the disputed evidence of record viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255 (1986).

[2] In its memorandum opinion on the Just Energy Defendants' motion for summary judgment, the court addressed Klein's failures in his response to the Just Energy Defendants' concise statement of material facts. Klein v. Just Energy Group, Inc., Civ. Act. No. 14-1050, 2016 WL 3539137, at *2-3 (W.D. Pa. June 29, 2016).

With respect to the facts numbered 52, 53 and 54, Klein states that he denies each fact and in support cites only to his third amended complaint as opposed to any evidence in the record or admission by pleading of Commerce Energy.  Klein admits in part and denies in part the facts numbered 34 and 41 with respect to the claimed independent contractor relationship status with Commerce Energy of the entity who made the data verification call and of the debt collection agency, Collectcents, stating that the supporting documents cited to and relied on by Commerce Energy do not establish the lack of an agency relationship.  (ECF No. 128 ¶¶ 34, 41).

Argument in Klein's brief and the reference back to the allegations in his third amended complaint are not evidence and are not sufficient to show a genuine dispute of fact exists. Beyond the local rule and this court's procedures, the United States Supreme Court has instructed that reliance on the party's own pleading is insufficient to dispute a fact supported by evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Schultz v. United States, Civ. Act. No. 15-454, 2017 WL 635289, at *4 (W.D. Pa. Feb. 16, 2017).  Klein simply directs the court to his brief containing his argument that the TCPA applies to calls made to his free Google VoIP service number ending in 0702 and restates the allegation made in his third amended complaint that the calls to his VoIP number were charged to him based on his assertion that they were forwarded by him from his VoIP service to the Verizon Wireless phone account for which he pays.  Klein does not dispute that he was not charged by Google for his VoIP service and that the service to him is free.  (ECF Nos. 140 ¶ 30; 141 ¶ 48).  Additionally, he does not provide evidence or point to any evidence in the record to show any charge for a call from Collectcents, whether from Collectcents directly, from a blocked number or from a call forwarded from his VoIP number to his cell phone, though he still argues and alleges he was called by a blocked

number and that he was charged.  (ECF Nos. 140 ¶¶ 28, 31, 33, 34, 35, 36; 141 ¶¶ 49, 51, 52, 53, 54).

Local Civil Rule of Court 56.B.1 requires the party moving for summary judgment to file a separate concise statement of material facts and requires that the party cite "to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement, acceptance, or denial of the material fact." W.D. Pa. LCvR 56.B.1.  In further support, the moving party must file an appendix with the documents supporting that party's concise statement of material facts. W.D. Pa. LCvR 56.B.3.  The opposing party also is to provide a separately filed concise statement admitting or denying the facts in the moving party's concise statement, W.D. Pa. LCvR 56.C.1.a, setting forth the basis for a denial of the moving party's concise statement with reference to the record, W.D. Pa. LCvR 56.C.1.b, and providing any additional material facts that are necessary for the court's ruling on the motion.  W.D. Pa. LCvR 56.C.1.c.  This court's Chambers' Rule 3.F.c.ii requires that the opposing party file a separate document in response to the moving party's concise statement indicating which facts are disputed and citing and attaching the evidence in support of any disputed facts. Local Civil Rule of Court 56.E specifically provides that the facts claimed to be undisputed and material in a party's concise statement "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."  W.D. Pa. LCvR 56.E.

Collectcents and Commerce Energy supported their concise statements with cites to the record and provided sufficient evidentiary materials in their appendices in support of the stated facts (ECF Nos. 115, 121), in compliance with Local Civil Rule of Court 56.B.1 and 56.B.3.

Under these circumstances and for the purpose of resolving the present motions for summary judgment, Collectcents' facts numbered 28, 30, 31, 32, 33, 34, 35, and 36 and Commerce Energy's facts numbered 48, 49, 50, 51, 52, 53, and 54 will be deemed admitted. With respect to the dispute about independent contractor status, Commerce Energy's facts numbered 34 and 41 and Klein's argument about the import of certain undisputed facts will be addressed later in this opinion.

## A. <u>Just Energy Entities and Master Services Agreements</u>

Just Energy Group, Inc., a Canadian corporation, is a natural gas and electricity retailer, (Collectcents CCSMF ¶ 13; Commerce Energy CCSMF ¶ 23), and has multiple affiliated entities. Collectcents CCSMF ¶¶ 14, 15, 16, 20; Commerce Energy CCSMF ¶¶ 24, 25, 27, 31. The other entities include Commerce Energy, (Collectcents CCSMF ¶ 14, Commerce Energy CCSMF ¶ 24), and Just Energy Corporation, which is not a defendant in this lawsuit. Collectcents CCSMF ¶ 20; Commerce Energy CCSMF ¶ 31. Just Energy Corporation, when it was known as Ontario Energy Savings Corporation, entered into a Master Collection Agency Services Agreement dated September 10, 2008 ("collection MSA") with Collectcents, operating as the Credit Bureau of Canada Collections. Collectcents CCSMF ¶¶ 17; Commerce Energy CCSMF ¶¶ 25, 40. Pursuant to the collection MSA, Collectcents provided debt collection services to Commerce Energy for its customer accounts. Collectcents CCSMF ¶¶ 17, 26; Commerce Energy CCSMF ¶ 40. Just Energy Corporation also entered into a Master Services Agreement effective July 21, 2009 with Quick Response Outsourcing, LLC ("QRO") under which QRO provided customer verification and information services to Just Energy Corporation and its affiliates ("customer verification MSA"). Collectcents CCSMF ¶¶ 20, 21; Commerce

Energy CCSMF ¶¶ 31, 32.

## B. Account of P.S.[3] and Customer Call and Verification Process

On June 17, 2013, Cedric Frisco ("Frisco"), who worked as an independent contractor[4] for Just Energy Marketing Corporation, which is not a defendant here, signed up P.S. as a customer of Commerce Energy. Collectcents CCSMF ¶ 18; Commerce Energy CCSMF ¶ 29. As part of the process of signing up P.S. as a customer, Frisco on or about June 17, 2013, provided to QRO the correct phone number for P.S. during a verification call with QRO, the third-party verification services company. Collectcents CCSMF ¶¶ 19, 22; Commerce Energy CCSMF ¶¶ 30, 32, 33, 35, 36. The individual from QRO participating in the verification call with Frisco regarding the Commerce Energy account of P.S. incorrectly recorded P.S.'s phone number. Collectcents CCSMF ¶ 23; Commerce Energy CCSMF ¶ 37. The number recorded was Klein's VoIP number ending in 0702, which was assigned to him for his Google VoIP service. Collectcents CCSMF ¶¶ 23, 24, 29; Commerce Energy CCSMF ¶¶ 37, 38, 47. Klein's Google VoIP service is a free service. Collectcents CCSMF ¶¶ 29, 30, 31; Commerce Energy CCSMF ¶¶ 48, 49, 51, 52, 53, 54. Klein also has Verizon cell service with the number ending in 7489 assigned to that service. Collectcents CCSMF ¶ 32; Commerce Energy CCSMF ¶ 50; (ECF No. 122-7).

Commerce Energy does not directly place calls to consumers for the purpose of verifying customer information when marketing energy to customers or for the purpose of collecting delinquent accounts. Collectcents CCSMF ¶¶ 16, 19; Commerce Energy CCSMF ¶ 26. All of

---

[3] The individual who signed up as a customer of Commerce Energy, Inc. d/b/a Just Energy is not a party to or involved in this suit and the validity of her debt is not at issue. The court will refer to her simply as P.S.

[4] Klein does not dispute the independent contractor status of Frisco. Collectcents CCSMF ¶¶ 18, 19; Commerce Energy CCSMF ¶¶ 29, 30.

Just Energy Group, Inc.'s affiliates and subsidiaries, including Commerce Energy, use third parties, such as QRO, to verify customer information and use third parties, such as Collectcents, for the purpose of collecting delinquent accounts. Collectcents CCSMF ¶¶ 16, 17, 26, 27; Commerce Energy CCSMF ¶ 26, 27, 28, 40.

## C. <u>Numerous Phone Calls to Klein's VoIP number</u>

In September 2013, the account of P.S. with Commerce Energy became delinquent. Collectcents CCSMF ¶ 25; Commerce Energy CCSMF ¶ 39. Pursuant to the collection MSA, Commerce Energy utilized Collectcents for all the debt collection phone calls related to the account of P.S.; Commerce Energy did not place any debt collection calls. Collectcents CCSMF ¶ 26; Commerce Energy CCSMF ¶¶ 40, 43, 44, 45. Because Klein's VoIP number had been erroneously recorded as the number for P.S., Commerce Energy provided Klein's VoIP number to Collectcents for the purpose of collecting the amount owing on P.S.'s account with the belief that the number provided was the correct number. Collectcents CCSMF ¶¶ 27, 29; Commerce Energy CCSMF ¶ 42. Collectcents made the debt collection calls that related to P.S.'s account beginning on September 30, 2013, and continuing until August 2014. Collectcents placed the calls to Klein's VoIP number—not P.S.'s phone number—because that was the number Commerce Energy gave to Collectcents for collection calls. Collectcents CCSMF ¶¶ 28, 29; Commerce Energy CCSMF ¶¶ 42, 43, 44, 47. Klein's VoIP records show calls coming from a number ending in 7575 or an "unknown" number related to various voice mail messages left by Collectcents. (ECF Nos. 116-7, 124-3, 125-3). The number ending in 7575 is not directly associated with Commerce Energy. Commerce Energy CCSMF ¶ 46. Numerous phone calls

were made by Collectcents to Klein's VoIP number attempting to collect the debt owed by P.S.[5]

During the course of this litigation, on September 24, 2014, Just Energy Defendants served on Klein their Objections and Responses to First Set of Requests to Admit, their Objections and Responses to First Set of Interrogatories, and their Objections and Responses to First Set of Requests to Produce Documents. Commerce Energy CCSMF ¶ 55. The Just Energy Defendants' response to Klein's interrogatory number 2 states that "upon information and belief [P.S.] is a customer of Commerce Energy, Inc. d/b/a Just Energy." (ECF No. 122-9 at 13). In response to interrogatory number 4, the Just Energy Defendants state that "none of the [Just Energy Defendants (nor any of their subsidiaries/related parties) have placed telephone calls to [P.S.] and/or the phone number [0702] for the purposes of debt collection calls," (ECF No. 122-9 at 14), and in response to interrogatory number 3 the Just Energy Defendants state that they "use a third-party independent contractor collection agency for debt collection purposes and therefore do not make outbound telephone calls for the purposes of collecting debts." (ECF No. 122-9 at 13-14).


## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential

---

[5] Collectcents' records support approximately ninety calls, (ECF No. 116-6), and by any fair characterization that would constitute numerous calls for the purpose of the court's analysis. See Leahey v. Franklin Collection Serv., Inc., 756 F. Supp. 2d 1322, 1328 (N.D. Ala. 2010) (referring to twenty-nine calls as numerous); see also Hoover v. Monarch Recovery Mgmt., Inc., 888 F. Supp. 2d 589, 588-89 (E.D. Pa. 2012) (allegation that ten calls a week for eleven weeks was sufficient to survive motion to dismiss on the issue of intent to annoy, abuse or harass).

to his or her case, and on which he or she will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor.  Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007).

The burden on a motion for summary judgment is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir.1996).  A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party.  McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005).  Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof or that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp., 477 U.S. at 322, 325; Marten v. Godwin, 499 F.3d 290, 295 (3d Cir.2007).

Once the movant meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex, 477 U.S. at 323–25.  The nonmoving party must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, opposing party admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial.  Id. at 324.  The nonmoving party cannot defeat a well-supported motion for summary judgment by

simply reasserting unsupported factual allegations contained in his or her own pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 323–24. The summary judgment inquiry asks whether there is a need for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000) (citing decisions); Liberty Lobby, 477 U.S. at 248–49; Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. Liberty Lobby, 477 U.S. at 248.

A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more those elements. Celotex, 477 U.S. at 322–23. If the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law. Liberty Lobby, 477 U.S. at 249. The nonmoving party must "do more than simply show that there is

some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every challenged] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F.App'x 353, 354 (3d Cir.2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir.2002)). Inferences based upon speculation or conjecture do not create a material factual dispute sufficient to defeat a motion for summary judgment. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

**V.    DISCUSSION**

Collectcents and Commerce Energy initially argue that Klein's TCPA claims against them fail because Klein cannot show that he was charged for his VoIP service or even that he was charged for any of the challenged calls. They further argue that any claim for invasion of privacy fails because the undisputed evidence shows that the calls were unintentionally made to Klein and because the claim is barred by the applicable statute of limitations. Commerce Energy argues with respect to vicarious liability urged only against it, that Klein cannot establish its vicarious liability for the conduct of Collectcents under agency principles. Collectcents argues with respect to the negligence claim remaining only against it, that it is entitled to summary judgment because Klein cannot show a duty owed to him, it breached any duty, or he suffered

damages as a result of any breach and because the court previously dismissed the same negligence claim. Finally, Collectcents argues that the statute of limitations bars the negligence claim with respect to calls made before January 20, 2014.

## A. TCPA Claim (Counts I, IV and V)

Klein seeks to hold Collectcents and Commerce Energy liable under the TCPA for Collectcents' violation of § 227(b)(1)(A)(iii) by using an automatic telephone dialing system or an artificial prerecorded voice in making numerous calls to him. (ECF Nos. 95 ¶¶ 25, 26, 53). The dispute under the TCPA centers on whether the calls to Klein's VoIP number constituted calls "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). In its prior opinion, the court left for another day the question whether the calls to Klein's VoIP number were subject to the TCPA under the charged call provision of 47 U.S.C. § 227(b)(1)(A)(iii), "or any service for which the called party is charged for the call," because Klein's particular VoIP service from Google is free. Klein v. Just Energy Group, Inc., 2016 WL 3539137, at *14 (W.D. Pa. June 29, 2016). That day now has come.

The TCPA provides in pertinent part:

**(b) Restrictions on use of automated telephone equipment**
(1) Prohibitions. **It shall be unlawful** for any person within the United States, or any person outside the United States if the recipient is within the United States—
**(A) to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) **using any automatic telephone dialing system or an artificial or prerecorded voice**—
(i) to any emergency telephone line . . . ;
(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

16

(iii) **to any telephone number assigned to** a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or **any service for which the called party is charged for the call** . . . .

47 U.S.C. § 227(b)(1) (emphasis added).

The TCPA provides a private right of action for violation of 47 U.S.C. § 227(b)(1):

(3) Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

The section relating to residential telephone subscribers is 47 U.S.C. § 227(c) and governs calls to the National Do-Not-Call Registry. See 47 U.S.C. § 227(c)(1) (authorizing the Federal Communications Commission ("FCC") to initiate rulemaking concerning the privacy rights of residential telephone subscribers). Section 227(c)(5) provides for a private right of action for § 227(c) violations where a person has received more than one telephone call "by or on behalf of" the same entity in violation of § 227(c). 47 U.S.C. § 227(c)(5).

To prevent evasion of the TCPA's call prohibitions, the FCC has treated calls made by a third party on behalf of a company as if the company itself made the call, whether in relation to collection or solicitation calls subject to § 227(b) or in rules governing solicitation calls addressed in § 227(c). With respect to collection calls under § 227(b)(1)(A)(iii) made to wireless

numbers, the FCC explained:

> To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. . . . [A] creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA Int'l for Clarification and Declaratory Ruling, 23 FCC Rcd. 559, 564 ¶ 10 (2008) (footnotes omitted). In its ruling, the FCC noted that the prohibitions on the use of autodialers in § 227(b)(1)(A)(iii) apply regardless of the content of the call, as opposed to the separate restrictions of § 227(c) on "telephone solicitations" that do not apply to calls that are solely for the purpose of collecting a debt. 23 FCC Rcd. at 565 ¶ 11.

As a remedial consumer protection statute, Gager v. Dell Financial Services, LLC, 727 F.3d 265, 271 (3d Cir. 2013), the TCPA's language is to be construed "broadly to effect its purpose." Lesher v. Law Offices of Mitchell N. Kay, P.C., 650 F.3d 993, 997 (3d Cir. 2011) (applying principal in context of Fair Debt Collection Practices Act "FDCPA" case). If proposed interpretations of the TCPA are equally plausible, the scales tip in favor of the consumer. Leyse v. Bank of America Nat. Ass'n, 804 F.3d 316, 327 (3d Cir. 2015).

> Considering the TCPA, the Supreme Court has explained:

> Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls to private homes—prompted Congress to pass the Telephone Consumer Protection Act of 1991 (TCPA or Act), 47 U.S.C. § 227. . . . The Act bans certain practices invasive of privacy and directs the Federal Communications Commission (FCC or Commission) to prescribe implementing regulations.

Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 370-71 (2012). The Court of Appeals for the Third Circuit observed that "Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." Gager, 727 F.3d at 268 (citations omitted).

The legislative history of the TCPA refers to prerecorded calls as "an intrusive invasion of privacy" and indicates that the TCPA is aimed at protecting individuals' privacy rights while balancing legitimate telemarketing practices. Leyse, 804 F.3d at 325-26 (citing Telephone Consumer Protection Act of 1991, Pub.L. No. 102–243, § 2(5)-(6), (10), 105 Stat. 2394 (note following 47 U.S.C. § 227); § 2(9), (12)-(13)). Debt collection calls as well as telemarking calls are within the TCPA's purview. Gager, 727 F.3d at 273; Fenescey v. Diversified Consultants, Inc., Civ. Act. No. 14-347, 2014 WL 252651, at *2 (M.D. Pa. June 4, 2014); Forrest v. Genpact Services, LLC, 962 F. Supp. 2d 734, 736 (M.D. Pa. 2013) (holding plaintiff stated a claim under both the TCPA and the FDCPA for excessive debt collection calls).

For purposes of the TCPA, it does not matter that P.S. was the intended recipient of the calls. In Leyse, the Court of Appeals for the Third Circuit held that the individual who answers the robocall[6] has standing to sue. 804 F.3d at 327. The aggrieved persons under the TCPA's provisions include the actual recipient of the telephone call, 804 F.3d at 325-26, because "[i]t is the actual recipient, intended or not, who suffers the nuisance and invasion of privacy." Leyse, 804 F.3d at 326.

VoIP service, which is the service used by Klein and the service to which his 0702 number is assigned, is becoming more commonly used and is provided over broadband connection, cable modem, fiber to the premises (FTTP), digital subscriber line (DSL) or other

---

[6] Automatically dialed calls are commonly referred to as "robocalls." See Leyse, 804 F.3d at 322.

wireline, and fixed wireless or other connections. FCC Releases New Local Telephone Competition Data: Third Collection to Comprehensively Include Interconnected VoIP, 2011 WL 97677, at *1-2 (FCC Jan. 11, 2011).

> Interconnected VoIP service represents an important and rapidly growing part of the U.S. voice service market. [It] enables voice communications over a broadband connection and allows users both to receive calls from, and place calls to, the public switched telephone network, like traditional phone service. Providers of the service include companies like Vonage as well as cable and telephone companies that own their own networks.

Id. "The technology converts voice into a digital signal that travels through the internet." Voice Over Internet Protocol (VOIP), https://www.fcc.gov/general/voice-over-internet-protocol-voip (last visited June 13, 2017). "VoIP can be used with either a telephone (mobile or land-line) or a PC as the user terminal. This gives different modes of operation: PC to PC, PC to telephone, telephone to PC and telephone to telephone or mobile-to-mobile, all via the internet." Rebecca Wong, Daniel B. Garrie & Gerald S. Levine, Voice-over Internet Protocol - the Continuing Difficulties in Neutrality and Privacy, 4 J. Legal Tech. Risk Mgmt. 41, 43 (2009).

There is no dispute that the challenged calls were made to Klein's VoIP number. Collectcents and Commerce Energy, however, dispute that either of them can be held liable under the TCPA for any of the calls because Klein cannot show that his VoIP service is a service for which he is charged for calls or even that he otherwise was charged for any of the calls. (ECF Nos. 114 at 7; 120 at 10-11).[7]

---

[7]For whatever reason, Commerce Energy argues that it is not liable for a direct violation of the TCPA only because Klein cannot show that he was charged for any of the calls. "The plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that 'make' a telephone call or text. . . . . [M]any of the courts that have considered this provision have held that the verb 'make' imposes [direct] civil liability only on the party that places the call or text." Melito v. American Eagle Outfitters, Inc., Civ. Act. Nos. 14-02240, 15-39, and 15-2370, 2015 WL 7736547, at *4 (S.D. N.Y. Nov. 30, 2015) (summarizing decisions). Klein argues that liability under the TCPA extends not only to a party who makes the call and a party on whose behalf the call is made but also to a party who stands to benefit from the call, citing Hartley-Culp v. Credit Management Co., Civ. Act. No. 14-282, 2014 WL 4630852

### 1. **VoIP Service and TCPA's Charged Call Provisions**

Klein relies on four decisions, <u>Lozano v. Twentieth Century Fox Film Corp</u>, 702 F. Supp.

2d 999 (N.D. Ill. 2010); <u>Abbas v. Selling Source, LLC</u>, No. 09-CV-3413, 2009 WL 4884471

(N.D. Ill. Dec. 14, 2009); <u>Osorio v. State Farm Bank, F.S.B</u>, 746 F.3d 1242 (11th Cir. 2014); and

<u>Lynn v. Monarch Recovery Mgmt.</u>, 953 F. Supp. 2d 612 (D. Md. 2013), <u>aff'd</u>, 586 F.App'x 103

(4th Cir. 2014) (*per curiam*), in arguing that the TCPA applies to the calls made by Collectcents

on behalf of Commerce Energy to his VoIP service. (ECF Nos. 124 at 3-4; 125 at 3-4). Klein

cites <u>Lozano</u> for the proposition that § 227(b)(1)(A)(iii) does not require him to show that he was

charged for any of the challenged calls because with respect to the catchall provision which

includes the phrase "or any service for which the called party is charged for the call," the terms

"for which the called party is charged for the call," under statutory interpretation principles only

modifies the words "or any service." (ECF Nos. 124 at 2-3; 125 at 2-3).

In <u>Lozano</u>, the court applied the last antecedent rule of statutory construction, observing:

"[d]ue to the occurrence of two disjunctive prepositions in the relevant portion of § 227, the

phrase 'for which the called party is charged for the call' only modifies 'any service.'" <u>Lozano</u>,

702 F. Supp. at 1009–10; <u>see Barnhart v. Thomas</u>, 540 U.S. 20, 26 (2003) ("a limiting clause or

---

(M.D. Pa. Sept. 15, 2014). (ECF No. 124 at 11). It appears that Klein intended to cite <u>Hartley-Culp v. Green Tree Servicing, LLC</u>, 52 F. Supp. 3d 700, 703 (M.D. Pa. 2014), which holds that the TCPA imposes direct and vicarious liability on an entity on whose behalf the call is placed, because <u>Credit Management Co.</u> addressed bifurcation issues. Despite Klein's representation, neither <u>Credit Management Co.</u> nor <u>Green Tree Servicing, LLC</u> suggest the broad sweeping extension of liability, whether direct or vicarious, to parties merely because they "stand to benefit" from the call. The FCC expressed in <u>In the Matter of the Joint Petition filed by Dish Network, LLC</u>, 28 FCC Rcd. 6574 (2013) (Declaratory Ruling): "in sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under . . . either section 227(c) or section 227(b)." 28 FCC Rcd. at 6593 ¶ 47. In accordance with its prior opinion, the court remains persuaded that a party is not liable merely because they stand to benefit from a call. <u>Klein v. Just Energy Group, Inc.</u>, Civ. Act. No. 14-1050, 2016 WL 3539137, at *8 (W.D. Pa. June 29, 2016).

phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows"). In <u>Lozano</u>, the court determined that the TCPA did not require that the plaintiff expressly allege that he was charged by his cellular phone company for receipt of challenged text messages sent by the defendant. 702 F. Supp. 2d at 1009. The problem with Klein's reliance on <u>Lozano</u> is that the calls in <u>Lozano</u> were made to a telephone number assigned to a cellular telephone service, rendering the catchall provision inapplicable. It was sufficient in <u>Lozano</u> that the "call," which the court determined included a text message, was made to a number assigned to a cellular telephone service. Klein's reading appears to attempt to eliminate altogether application of the phrase "for which the called party is charged for the call." If the phrase applies neither to a telephone number assigned to a cellular telephone service under the last antecedent rule nor apparently as a relevant modifier to "any service," then it is improperly rendered meaningless. <u>See</u> <u>Massie v. U.S. Dept. of Housing and Urban Dev.</u>, 620 F.3d 340, 352 (3d Cir. 2010) (that no provision shall be superfluous or insignificant is a core tenet of statutory interpretation).

Klein cites <u>Abbas</u> for the proposition that if the TCPA only prohibited calls to numbers that result in a charge to the called party, then it would have been unnecessary for Congress to give the FCC the authority to create exemptions for uncharged calls under 47 U.S.C. § 227(b)(2)(C). In accordance with the statutory language, <u>Abbas</u> concluded: "the court finds that the TCPA does not require that a party called via a number <u>assigned to a cellular telephone service</u> must be charged for the call to make that call actionable." <u>Abbas</u>, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (emphasis added). Klein's argument wholly ignores that the statutory reference to calls to a number assigned to a cellular telephone service without requiring

a charge for the call is inapplicable here because the number called by Collectcents is assigned to Klein's VoIP service, and thus, the catchall provision "or any service for which the called party is charged for the call" is relevant here. That Congress gave authority for the FCC to create exemptions for uncharged calls made to a number assigned to a cellular service actually bolsters the distinction as applied to Klein's VoIP number. It is Klein's interpretation that would render ineffective statutory construction of the catchall provision.

Osorio also does not support Klein's position. In Osorio, the Court of Appeals for the Eleventh Circuit addressed the "rule of punctuation" and the "rule of last antecedent" in determining that a plaintiff did not have to show a charge for each and every robocall made to the number assigned to the plaintiff's cellular telephone service. In so ruling, the court stated:

> In the end, we go back to the basic question of whether the TCPA itself exempts all autodialed calls for which there is no charge. The applicable canons of construction indicate that it does not. To repeat the key language, the Act prohibits autodialed calls "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(A)(1)(iii). The rule of the last antecedent requires the phrase "for which the called party is charged for the call," *id.,* to be applied to the words or phrase immediately preceding [i.e., "any service"], and ... not to be construed as extending to or including others more remote; namely, "paging," "cellular telephone," or "mobile radio" services, 47 U.S.C. § 227(b)(A)(1)(iii). We therefore presume that Congress did not intend the phrase "for which the called party is charged for the call" to apply to cellular telephone services.
> Nevertheless, [w]here the modifier is set off from two or more antecedents by a comma, the supplementary "rule of punctuation" states that the comma indicates the drafter's intent that the modifier relate to more than the last antecedent. This rule is, however, inapplicable to the language in question. The modifier in this case, "for which the party is charged," is not set off from the series by a comma. That is, for the rule of punctuation to apply, 47 U.S.C. § 227(b)(1)(A)(iii) would have to read "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service, for which the called party is charged for the call." Because the final comma emphasized in the above iteration does not appear in the statute, we conclude that the phrase "for which the called

party is charged for the call" modifies only "any service" and not the other terms of the series.

Reading [it this way] also comports with the canon against superfluity. The canon against superfluity instructs that [i]t is our duty to give effect, if possible, to every clause and word of a statute.  If the phrase "any service for which the called party is charged for the call" requires that the party be charged per call for the "paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service" in order for the party to prohibit autodialed calls, then the listing of these services would be superfluous because they are already included under the term "any service for which the called party is charged." On the other hand, reading "any service for which the called party is charged for the call" as an additional item beyond any call to a "paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service," regardless of whether the called party is charged, gives independent meaning to each term.

An interpretation of 47 U.S.C. § 227(b)(1)(A)(iii) that exempts all autodialed calls to cellular phones for which the called party is not charged per call, moreover, would clash with § 227(b)(2)(C) of the same statute. This latter section specifies that the FCC

> may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect.

47 U.S.C. § 227(b)(2)(C). The provision allowing for the promulgation of exemptions would be meaningless if, as State Farm proposes, § 227(b)(1)(A)(iii) already exempts all calls for which the party is not charged per call.

Osorio, 746 F.3d at 1257–58.

Klein argues that he subscribes to Google's VoIP, which he has admitted is free to him, and also has a cellular telephone plan through Verizon Wireless that instead of assessing a per use fee for each call simply allows him certain minutes and data per month.  (ECF Nos. 124 at 3; 125 at 3-4).  He insists that it matters naught whether the consumer is charged for the call on the front end as with a limited bundle of minutes or on the tail end as an itemized charge for each call.  See Thomas v. Dun & Bradstreet Credibility Corp., 100 F. Supp. 3d 937, 947 (C.D. Ca.

2015) (depletion of allocated minutes results in a loss of economic value); <u>Telephone Science Corp. v. Asset Recovery Solutions, LLC</u>, No. 15 C 5182, 2016 WL 47916 (N.D. Ill. Jan. 5, 2016) (involving plaintiff's VoIP service that charged him $.0075 for each inbound call); <u>see</u> <u>also</u> <u>In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 18 FCC Rcd. 14014, 14115 (June 26, 2003) ("The Commission has long recognized, and the record in this proceeding supports the same conclusion, that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Wireless subscribers who purchase a large 'bucket' of minutes at a fixed rate nevertheless are charged for those minutes, and for any minutes that exceed the 'bucket' allowance."). The court does not disagree that a call charge on the "front end" might qualify for purposes of the charged call provision under the TCPA. Nevertheless, the called party must be charged for the call for there to be a violation of § 227(b)(1)(A)(iii) where the calls are made to a number not assigned to certain enumerated services, <u>ie</u>., a paging service, cellular telephone service, specialized mobile radio service or other radio common carrier service.

Relying on <u>Lynn</u>, 953 F. Supp. 2d 612,[8] Klein asserts that "[c]alls made to a VoIP number with limited minutes/data should be treated the same as calls to a cellphone under the TCPA." (ECF No. 124 at 3; 125 at 3). Klein's reliance on <u>Lynn</u> is misplaced. In <u>Lynn</u> the plaintiff submitted evidence that he actually was charged for each of the challenged calls by his particular VoIP service provider; he was charged a monthly fee as well as a per call fee, 953 F. Supp. 2d at 616-617, whereas Klein's VoIP service is free—meaning he is not charged for the

---

[8] Klein mistakenly refers to the district court decision as if it was issued by the appellate court. In <u>Lynn</u> the Fourth Circuit Court of Appeals affirmed the district court's decision that considered the "call-charged provision" in § 227(b)(1)(A)(iii) and due to its breadth rejected the defendant's attempt to rely on the FCC's regulation exempting debt collection calls from the prohibition in § 227(b)(1)(B) to also provide relief under § 227(b)(1)(A) by extension. <u>Lynn v. Monarch Recovery Mgmt.</u>, 586 F.App'x 103 (4th Cir. 2014) (*per curiam*).

calls to his VoIP number by his VoIP service provider at all. Under the statute a VoIP service is treated differently, though still potentially covered, because it falls within the catchall provision and does not fall within the specifically enumerated services in the series.

Collectcents did not make calls to a number assigned to Klein's cell service, the calls were made to a number assigned to another service, his VoIP service, and then allegedly forwarded by him to his cell service. Klein contends that he should be considered to have been charged for the calls to his VoIP number because he also has wireless service for which he pays a monthly fee for service and the VoIP number is forwarded to his wireless service, that he describes as a "linking" of the numbers. (ECF Nos. 124 at 3-4; 125 at 3-4). This "linking" by him does not mean the VoIP number constitutes or is rendered a number assigned to a cellular telephone service. Even under Klein's apparent alternative reading that creatively would cover calls forwarded by a plaintiff[9] where the plaintiff is charged for the call by the service to which the call is forwarded, (ECF Nos. 124 at 3; 125 at 3), Klein—because of the catchall phrase's applicability—still must show a charge for the VoIP call. The evidence submitted simply does not show that Klein was charged for <u>any</u> of the challenged calls to his VoIP number and his argument is not evidence.

For example, Klein attached copies of his Verizon Wireless bills for calls made for the period from December 19, 2012 through December 18, 2013 in appendices to his opposition to

---

[9] The argument presents that where a person sets up the forwarding of calls made to a number assigned to one service to then forward to a number assigned to another service it is the person setting up the forwarding of calls who in essence is making the call to the second service. Conceptualized this way, charges for the initial call only should be considered for the catchall provision with no need to consider the Verizon Wireless bills at all because any charges by Verizon Wireless for the forwarding of calls to a number assigned by that service would be calls made by Klein from his VoIP service to his own Verizon Wireless service. Collectcents and Commerce Energy do not raise this particular argument and the court will not discuss it further.

the motions for summary judgment. (ECF Nos. 124-4; 125-4).[10] His additional Verizon Wireless bills covering calls from December 19, 2013 through February 18, 2014 are included in the appendices to the Collectcents' and Commerce Energy's Concise Statement of Material Facts. (ECF Nos. 122-7, 123-7). Therefore, the court will consider all Klein's Verizon Wireless bills in the record. Klein provided recordings of twelve voice mail messages, presumably representing the general nature of the offending calls. (ECF Nos. 124-1; 125-1).[11] Other than the twelve voice messages and the Verizon Wireless bills, Klein does not attempt to point to any evidence in the record in support of his assertion that he was charged for the calls.

None of Klein's Verizon Wireless bills, which were provided by Klein, Collectcents and Commerce Energy, are sufficient to establish that Klein paid for any of the challenged calls to his VoIP number because the bills do not upon review reflect any calls originating from the 7575 number, a blocked number or even from Klein's VoIP number 0702 as a forwarded call. The voice mail messages of the twelve calls to Klein's VoIP number provided by Klein when considered with the other submissions on summary judgment also do not show any charges for the calls to his VoIP number whether on a per call basis or simply as a recorded charge anywhere on the bills. The voice messages submitted by Klein as representative of the challenged calls all appear to be messages that only were left on Klein's free Google VoIP's message service and there is no evidence of any voicemails left on his Verizon cell phone voicemail. Compare, e.g. (ECF Nos. 124-1; 125-1 [scan indicating dates of mp3 recordings provided to court]), (ECF Nos. 124-3, 125-3 [Google Voice service log of calls and messages]) and (ECF No. 124-4 [Verizon

[10] It is unclear why Klein submitted bills beginning in 2012 and including part of 2013, which are for calls prior to the relevant period.
[11] Audio recordings of twelve phone calls are intended to be filed as appendix 1 to Klein's oppositions. The appendix includes a scan of a page listing the recordings. (ECF Nos. 124-1; 125-1). Pursuant to an order of the court (ECF No. 71), plaintiff previously provided copies of the audio files for the court's review.

Wireless bills]).[12]  The record evidence simply would not support a reasonable jury finding that Klein was charged for the calls as required to establish his TCPA claim under the catchall phrase of § 227(b)(1)(A)(iii).

Klein asserts that his VoIP service is not an unlimited calls/flat fee plan and therefore any calls deplete his store of minutes, meaning he is "charged" for the call. (ECF Nos. 124 at 4; 125 at 4).  The problem with Klein's argument is not with a flat fee plan versus an itemized VoIP minute plan; rather, it is that his argument wholly contradicts the record evidence that his <u>actual</u> Google VoIP service, which assigned him the number erroneously called, is free.  Klein confronts the same problem with his argument that he is charged when the calls are forwarded to his Verizon Wireless service, arguably resulting in a violation of the TCPA, because the Verizon Wireless bills do not show any charges or any deduction from a bundle of minutes for the challenged Collectcents' calls made to Klein's VoIP number, whether forwarded or not.  Klein failed to provide sufficient evidence for a reasonable jury to find that he was charged for any of the challenged calls as required by § 227(b)(1)(A)(iii).  Accordingly, Collectcents is entitled to summary judgment with respect to Count I for violation of the TCPA and Commerce Energy is entitled to summary judgment with respect to Count IV for violation of the TCPA and the portion of Count V asserting a claim for vicarious liability for violation of the TCPA.

---

[12] The court reviewed all the records related to the challenged calls and compared them with the audio call records submitted by Klein. Most of the calls appear to be reflected on Klein's Google VoIP service records that he provided to the Just Energy Defendants in discovery as Google Voice or Text messages.  The pages from Klein's Google VoIP service that include the dates of the other two calls, the voice messages provided by Klein for a February 7, 2014 call and a March 24, 2014 call, are not in the record for the court's consideration.  <u>See</u> (ECF Nos. 116-7, 122-8, 124-3, 125-3). The Verizon records submitted for review do not reflect these calls.

## 2.  Additional Arguments on Vicarious Liability under the TCPA[13]

Although the court will grant summary judgment to Commerce Energy on both the claim under Count IV for direct violation of the TCPA and the claim under Count V for vicarious liability under the TCPA because his evidence is insufficient to establish that he was charged for the calls, the court addresses Commerce Energy's additional arguments with respect to vicarious liability for violation of the TCPA for completeness and because much of the same analysis applies to vicarious liability for the remaining state law claims.

Klein relies on various FCC rulings to assert that Commerce Energy is vicariously liable for violations of the TCPA under an agency theory.  The FCC posits that federal common law agency principles providing for vicarious liability for calls initiated by a third party advances the goals of the TCPA.  In the Matter of the Joint Petition Filed by Dish Network, LLC., 28 FCC Rcd at 6587 ¶ 35.  The United States Supreme Court in Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663 (2016),  held that a party may be liable under the TCPA in accordance with tort-related vicarious liability rules. 136 S.Ct. at 674 (the Court had no cause to question the FCC's ruling that vicarious liability applies under the TCPA).

"[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules."  Meyer v. Holley, 537 U.S. 280, 285 (2003).  "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."  537 U.S. at

---

[13] Commerce Energy points out that at times Klein incorporated wholesale his prior briefs without correcting for the fact that the present motion is made by Commerce Energy d/b/a Just Energy and that the Just Energy Defendants have obtained summary judgment in their favor. (ECF No. 136 at 6).  Commerce Energy, as will the court, proceeds under the understanding that when Klein identifies "Just Energy Defendants," he intends instead to refer to Commerce Energy, which does business as Just Energy.

285. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." Gomez v. Campbell-Ewald Co., 768 F.3d 871, 879 (9th Cir. 2014), aff'd 136 S.Ct. 663 (2016). Vicarious liability under the TCPA may be established under a broad range of agency theories, including formal agency, apparent authority and ratification. 28 FCC Rcd. at 6582 ¶ 24, 6584 ¶ 28, 6588 ¶37. The relationship between the parties is paramount in determining whether there can be vicarious liability. Gomez, 768 F.3d at 878.

### a) Formal Agency and Independent Contractor Status

In Commerce Energy's Combined Concise Statements of Material Facts, Commerce Energy refers to Collectcents as an "independent contractor," citing the collection MSA in support. Commerce Energy CCSMF ¶¶ 41. Commerce Energy argues that it cannot be held vicariously liable for Collectcents' actions based on any alleged "employment or agency" relationship because Collectcents is an independent contractor. (ECF No. 120 at 17). "[A]n employer may be liable for the intentional torts committed by a servant, but not for those committed by an independent contractor." Woolfolk v. Duncan, 872 F. Supp. 1381, 1392 (E.D. Pa. 1995). Klein disputes the use of the term "independent contractor" to refer to the status of Collectcents.

Commerce Energy aptly points out that the party asserting the agency relationship or seeking vicarious liability bears the ultimate burden of its proof at trial. I.H. ex rel. Litz v. County of Lehigh, 610 F.3d 797, 802 (3d Cir. 2010). Nevertheless, the moving party bears the burden of showing the absence of a dispute of material fact. This court instructed on Just Energy Defendants' motion for summary judgment:

Whether an individual or entity is an "independent contractor" such that the party contracting with that individual or entity would not be liable for the conduct of that individual or entity or an "agent" such that Collectcents would be liable for the conduct of its agent depends on the facts and circumstances of each case. Castle Cheese, Inc. v. MS Produce, Inc., Civ. Act. No. 04-878, 2008 WL 4372856, at *6-9 (W.D. Pa. Sept. 19, 2008) (discussing distinction between independent contractor, principal-agent and master-servant relationship and observing that status of agent and independent contractor are not mutually exclusive). Despite their dispute, neither party attempts any analysis about the possible independent contractor status of Collectcents. As a result of the moving parties' failure to engage in the analysis, the court declines to accept their characterization of Collectcents . . . as independent contractor[] for purposes of resolving the summary judgment motion.

Klein v. Just Energy Group, Inc., 2016 WL 3539137, at *10.

The collection MSA pursuant to which Collectcents performs debt collection services, including debt collection calls, labels the status of Collectcents as an "independent contractor," but a label or express denial of status by the parties to a contract is not alone determinative and the court must consider the actual practice between the parties. Zeno v. Ford Motor Co., Inc., 480 F. Supp. 2d 825, 841-848 (W.D. Pa. 2007) (discussing no-agency clause in contract between automobile dealer and manufacturer and citing Restatement (Third) of Agency § 1.02 ("Parties' Labeling and Popular Usage Not Controlling") cmt. b. ("The parties' agreement may negatively characterize the relationship as not one of agency, or as one not intended by the parties to create a relationship of agency or employment. Although such statements are relevant to determining whether the parties consent to a relationship of agency, their presence in an agreement is not determinative and does not preclude the relevance of other indicia of consent.")); see Safarian v. American DG Energy, Inc., 622 F.App'x 149, 150 (3d Cir. 2015) (reversing and remanding where court granted summary judgment to defendant but did not reason through factors determining employment status under applicable federal and New Jersey law); see also

Rutherford Food Corp. v. McComb, 331 U.S. 722, 1476 (1947) (label not determinative); First Liberty Inv. Group v. Nicholsberg, 145 F.3d 647, 652 & n.3 (3d Cir. 1998) (rejecting tyranny of labels in arbitration matter, considering characterization in agreement and indicating "[w]hat rather controls is the parties' total relationship."); Sharkey v. Ultramar Energy Ltd., Lasmo plc, Lasmo (AUL Ltd.), 70 F.3d 226 (2d Cir. 1995) (employment status in ERISA matter not determined solely by the label used in the parties' contract); Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1492 (11th Cir. 1993) (label insufficient); Swartz v. Eberly, 212 F. Supp. 32, 34 (E.D. Pa. 1962) ("[W]hether one is an independent contractor or an employee of another is not to be decided by the lable which they place upon their relationship. It is determined on an independent examination of all of the surrounding circumstances."); Beckman v. Vassall-Dillworth Lincoln-Mercury, Inc., 468 A.2d 784, 790-91 (Pa. Super. 1983) (considering "no-agency" clause and lack of evidence as to express, implied or apparent authority in rejecting plaintiff's assertion of agency relationship).

Commerce Energy argues that Klein did not undertake sufficient discovery to refute its assertion for the summary judgment motion about the independent contractor status of Collectcents. (ECF No. 136 at 9). Commerce Energy, however, cites to no more than the label in the contract and an affidavit merely reciting this very same label. (ECF No. 122-1 ¶ 22; 122-4 at 2). Merely pointing to the label of "independent contractor", rather than undertaking an analysis of the relationship between Commerce Energy and Collectcents with respect to debt collection activities, is insufficient to support a motion for summary judgment. Klein v. Just Energy Group, Inc., 2016 WL 3539137, at *10 ("Despite their dispute, neither party attempts any analysis about the possible independent contractor status of Collectcents and Data

Exchange/QRO.  As a result of the moving parties' failure to engage in the analysis, the court declines to accept their characterization of Collectcents and Data Exchange/QRO as independent contractors for purposes of resolving the summary judgment motion.").

### b) <u>Apparent Authority</u>

In addition to formal agency, Klein urges that Commerce Energy is vicariously liable for the calls made by Collectcents under apparent authority jurisprudence, relying on FCC rulings under the TCPA, <u>Richardson v. John F. Kennedy Memorial Hospital</u>, 838 F. Supp. 979, 985 (E.D. Pa. 1993) (citing <u>Volunteer Fire Co. v. Hilltop Oil Co.</u>, 602 A.2d 1348, 1351-52 (Pa. Super. Ct. 1992)), and the Restatement (Third) of Agency § 4.01.  (ECF No. 124 at 9-10).  Klein points to a statement made during the calls by the caller identifying the calling party as "Just Energy" to the call recipient.  (ECF No. 124 at 14).  Klein argues that because Collectcents identified itself as "Just Energy" in the phone calls, Commerce Energy d/b/a Just Energy either must have granted Collectcents that right or was aware that Collectcents' callers identified themselves as "Just Energy" to call recipients and thus Collectcents had the apparent authority to make the calls on behalf of Commerce Energy d/b/a Just Energy.  (ECF No. 124 at 14).

In the case of telemarketing calls challenged under § 227(b), the FCC found "illustrative" certain examples of apparent authority rendering the seller of goods or services vicariously liable for the telemarketing company's calls, stating:

> To provide guidance in this area, we find the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations.  For example, . . . that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control . . . as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's

telemarketing scripts.

<u>In the Matter of the Joint Petition filed by Dish Network, LLC</u>, 28 FCC Rcd. at 6592 ¶ 46.

Commerce Energy argues under <u>Richardson</u> that Klein's reliance on the caller describing herself as "Just Energy" is insufficient to show agency because "[a]n agent can bind his principal where the agent has actual or apparent authority. . . . Apparent authority exists *where the principal,* by words *or conduct, leads people with whom the alleged agent deals to believe* that the principal has granted the agent the authority he purports to exercise." 838 F. Supp. at 985 (internal citations omitted) (emphasis added). "Agency 'cannot be assumed from the mere fact that one does an act for another.'" <u>Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co.</u>, 602 A.2d 1348, 1351 (Pa. Super. Ct. 1992) (quoting <u>Bross v. Varner</u>, 48 A.2d 880, 881 (Pa. Super. Ct. 1946)). Thus, the alleged agent cannot create the agency relationship or bind the principal by the agent's acts alone.

<u>Richardson</u> involved whether a sub-agent had authority to bind a corporation. In <u>Richardson</u>, the executive director/president directed the plaintiff to deal with the "special assistant to the president" on matters involving the contract, and the hospital's by-laws vested the executive director/president with authority to enter contracts on the hospital's behalf. Under those circumstances, the court found there was sufficient evidence from which a reasonable jury could find that the executive director/president had authority to enter into a contract without hospital board approval and that the special assistant likewise had such authority. <u>Richardson</u>, 838 F. Supp. at 985-86.

This court pointed out in its memorandum opinion issued with respect to the Just Energy Defendant's motion for summary judgment that although the evidence did not show a relationship between Collectcents and any of the Just Energy Defendants with respect to the

34

account of P.S. or show that the Just Energy Defendants by their words or conduct led Klein to believe the calls were on behalf of any of the Just Energy Defendants, the record evidence might support that Collectcents had authority on behalf of Commerce Energy d/b/a Just Energy to make the calls with respect to the account of P.S. <u>Klein v. Just Energy Group, Inc.</u>, 2016 WL 3539137, at *12. Under the collection MSA, relied on by Commerce Energy, the collection agency is required to obtain authorization to use the name of the entity on whose behalf it is debt collecting, the creditor is to provide the collection process to be followed, integration of the creditor and debt collection agency systems are contemplated, the collection agency is to record all collection calls and provide them to the creditor for auditing and evaluation of the collection agency's call process and account information, and daily reporting including "<u>right</u> party contact rate" was to be made. (ECF No. 122-4 at 5 & ¶ 11) (emphasis added).

When considering that Commerce Energy uses Collectcents for making collection calls, the MSA, the MSA's provision that authority must be given to utilize the Just Energy name, and the MSA's provision that copies of the collection calls made by Collectcents are regularly provided for review, viewing the facts in the light most favorable to Klein and drawing all reasonable inferences in favor of Klein, the court concludes that there is sufficient evidence from which a reasonable jury could find that Collectcents exercised apparent authority on behalf of Commerce Energy in making the collection calls. The evidence also is sufficient for a reasonable jury to find that Collectcents made the calls on behalf of Commerce Energy d/b/a Just Energy at Commerce Energy's behest and to Klein's number provided to Collectcents by Commerce Energy for the purpose of making the debt collection calls. <u>See</u> Collectcents CCSMF ¶¶ 27, 29; Commerce Energy CCSMF ¶ 42.

### c) **Ratification**

In opposing Commerce Energy's motion, Klein additionally asserts vicarious liability under a ratification theory. Klein cites to the Restatement (Third) of Agency, Ratification Defined, which provides:

> (1) Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.
> (2) A person ratifies an act by
> (a) manifesting assent that the act shall affect the person's legal relations, or
> (b) conduct that justifies a reasonable assumption that the person so consents.

RESTATEMENT (THIRD) OF AGENCY, § 4.01(b). Klein cites the portion of comment d to that section, which notes that acceptance of the benefit of the transaction ratifies the act of entering into the transaction even though the party may manifest dissent to being bound by the legal consequences of the act. Id., cmt. d, ¶ 2; (ECF No. 124 at 15). Klein argues that Commerce Energy can be liable because the calls made by Collectcents *presumably* would have allowed Commerce Energy to collect money owed to it, which would be the exact purpose of the debt collection enterprise. (ECF No. 124 at 15).

In response, Commerce Energy argues that it is not bound by the acts of Collectcents in making the calls because there is no evidence that Commerce Energy knew Collectcents was repeatedly calling the wrong number. (ECF No. 136 at 11). There, however, is evidence establishing that Commerce knew that Collectcents was calling Klein's number to collect the debt owed by P.S. because it was Commerce Energy that provided that very number to Collectcents for the purpose of the calls that Collectcents was hired to make for Commerce

Energy.[14]   Notably, § 4.01(b)(2)(b) provides for ratification under circumstances where the conduct justifies a reasonable assumption that the person consents to the act and comment f to that section provides that a "principal may ratify an act by failing to object to it or to repudiate it."   Restatement (Third) of Agency § 4.01, cmt. f.   The MSA, for example, provides for submission to and review by the creditor of the calls made on its behalf.   The same evidence viewed in the light most favorable to Klein that supports apparent authority likewise supports ratification.[15]

In sum, the court based upon the record must conclude that the evidence adduced would be sufficient to support a finding by a reasonable jury that Collectcents was acting as an agent, whether under actual authority, apparent authority or ratification theories, for Commerce Energy with respect to the calls placed to Klein's VoIP number.   Accordingly, the lack of agency argument does not provide an additional basis for granting summary judgment in favor of Commerce Energy on the claim against it for vicarious liability for Collectcents' alleged violations of the TCPA.

### 3.   Remaining State Law Claims

The court must consider whether it will exercise supplemental jurisdiction over the remaining state law claims against Collectcents and Commerce Energy pursuant to 28 U.S.C. § 1367(c)(3) because it has concluded that Collectcents and Commerce Energy are entitled to

---

[14] Commerce Energy seeks to interpose QRO between it and Collectcents with respect to the error in recording Klein's number.   As set forth in the statement of facts, however, it was Commerce Energy and not QRO that provided the number to Collectcents for debt collection.   Collectcents CCSMF ¶¶ 27, 29; Commerce Energy CCSMF ¶ 42.

[15] In arguing for vicarious liability, Klein cites to the FCC's indication that the seller in the telemarketing context, and presumably the creditor in the debt collection context, would be in the best position to monitor and police third-party compliance with the law and liability would give the seller and creditor the best incentive to ensure compliance with the law. (ECF No. 124 at 12). Although this indication does not itself justify vicarious liability, it would add support for it, particularly in light of the purpose of the TCPA.

summary judgment on the TCPA claims, the only federal claims remaining in this action. Klein contends in his third amended complaint that the court not only has federal question jurisdiction under 28 U.S.C. § 1331, but that it also has diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 95 ¶¶ 6, 7). The court, however, previously held that its jurisdiction over this matter rests upon the federal question pursuant to 28 U.S.C. § 1331 and the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because defendant Just Energy Pennsylvania Corp. was non-diverse from Klein. <u>Klein v. Just Energy Group, Inc.</u>, 2016 WL 3539137, at *14 (citing <u>Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Mgmt., Inc.</u>, 316 F.3d 408, 410 (3d Cir. 2003)).[16] The court in its prior opinion on the Just Energy Defendants' motion for summary judgment considered the relevant factors and exercised supplemental jurisdiction over the state law claims remaining against the Just Energy Defendants.

The court now considers whether it will exercise supplemental jurisdiction over the remaining state law claims against Collectcents and Commerce Energy. Though the time during which Collectcents and Commerce Energy have been involved in this matter, approximately seventeen months and eleven months, respectively, is not lengthy, both filed summary judgment motions, this case is no longer procedurally at an early stage, and the state law claims were fully addressed in the present motions. In this posture, the considerations of judicial economy, convenience, fairness and comity, weigh in favor of exercising supplemental jurisdiction with respect to the state law claims against Collectcents and Commerce Energy. <u>Cindrich v. Fisher</u>,

---

[16] Ordinarily, the court's diversity jurisdiction depends upon the state of facts or condition of the parties at the time the action is brought. <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 570 (2004). An exception to the time-of-filing rule is the method of curing the lack of the statutorily required complete diversity through the district court's exercise of its discretion under Federal Rule of Civil Procedure 21 to dismiss the non-diverse party if they are dispensable, which the court may do even after judgment is entered. <u>Grupo Dataflux</u>, 541 U.S. at 572-73. Because the court determines after granting summary judgment on the only federal claims remaining against Collectcents and Commerce Energy that it will exercise its supplemental jurisdiction over the state law claims in any event, the court need not assess whether the exception is applicable.

341 F.App'x 780, 790 (3d Cir. 2009).  Accordingly, supplemental jurisdiction over these claims will be exercised.

The court concludes as indicated below that Collectcents and Commerce Energy are entitled to summary judgment with respect to all the state law claims in the Third Amended Complaint remaining against them, namely: the claim in Count II against Collectcents for invasion of privacy under an intrusion upon seclusion theory; the claim in Count III for negligence against Collectcents; and the claim in Count V against Commerce Energy for vicarious liability for invasion of privacy committed by Collectcents.

### a)  <u>Statute of Limitations Defense and Tolling</u>

Commerce Energy and Collectcents assert the statute of limitations defense as a complete bar to Klein's claims for invasion of privacy under intrusion of seclusion theory.  (ECF No. 114 at 13; ECF No. 120 at 13).  Collectcents additionally seeks summary judgment on the claim for negligence "to the extent that it seeks to recover damages in connection with any of the calls at issue that were made prior to January 20, 2014 because such a claim is time-barred." (ECF No. 114 at 19).  Under Pennsylvania law, the statute of limitations is one year for a claim for invasion of privacy, 42 Pa. Cons. Stat. § 5523**,** and two years for a claim for negligence.  42 Pa. Cons. Stat. § 5524(2) & (7).  Collectcents was first sued on January 20, 2016, i.e., in the second amended complaint.  (ECF No. 51).  Commerce Energy was not added to this action until September 13, 2016, when Klein filed the third amended complaint.  (ECF No. 95).

Klein responds to these motions by arguing that the discovery rule and fraudulent concealment tolled the statute of limitations.  (ECF Nos. 124 at 7-8; 125 at 7-8).  Once the statutory period has expired, the suit is barred unless he can establish that an exception to the bar

applies to toll the running of the statute. <u>Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.</u>, 468 A.2d 468, 471 (Pa. 1983).

As explained in <u>Royal Mile Co. v. UPMC</u>, 40 F. Supp. 3d 552 (W.D. Pa. 2014):

The requirements for tolling the statute of limitations based upon a defendant's fraudulent concealment are similar under federal and Pennsylvania law. . . . [I]n a case decided under Pennsylvania law, <u>Bohus v. Beloff</u>, 950 F.2d 919 (3d Cir.1991), we identified the three factors necessary to forestall the running of the limitations statute by way of a fraudulent concealment allegation: (1) an affirmative act of concealment; (2) which misleads or relaxes the plaintiff's inquiry, who (3) exercised due diligence in investigating his cause of action. *Id.* at 925–26. . . . [A] plaintiff seeking to toll the statute of limitations based upon the defendant's fraudulent concealment must also show the plaintiff exercised due diligence until the discovery of the facts forming the basis [of his claim].

<u>Royal Mile Co.</u>, 40 F. Supp. 3d at 576 (internal citations and quotations omitted).

The discovery rule will toll the limitations period if Klein was "unable, despite the exercise of reasonable diligence, to discovery the injury or its cause." <u>Mest</u>, 449 F.3d at 510. The rule is designed to ameliorate harsh effects of the limitations bar. <u>Id.</u> "For the statute of limitations to run, a plaintiff need not know the 'exact nature' of his injury, as long as it objectively appears that the plaintiff is reasonably charged with the knowledge that he has an injury caused by another." <u>Id.</u> at 510-11 (internal citations and quotations omitted). "Demonstrating reasonable diligence requires a plaintiff to establish that [he] pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." <u>D.D. v. Idant Lab.</u>, 374 F.App'x 319, 322 (3d Cir. 2010) (internal citations and quotations omitted).

Klein maintains that a jury should decide whether the limitations period was tolled. (ECF Nos. 124 at 7; 125 at 7). If reasonable minds would not differ, however, "Pennsylvania courts

have not hesitated, where appropriate, to find as a matter of law that a party has not used reasonable diligence in ascertaining his or her injury and its cause, thus barring the party from asserting his or her claim under the discovery rule." Gleason v. Borough of Moosic, 15 A.3d 479, 485-486 (Pa. 2011). Klein cannot escape the effect of notice in this matter.

There is no doubt that through ordinary diligence the identity of Commerce Energy would have been known to Klein because the Just Energy Defendants' September 24, 2014 responses to Klein's discovery requests identified Commerce Energy by name as the entity on whose behalf the calls were made. Any argument to the contrary by Klein flatly contradicts the record evidence. Thus, on this matter, there is no question for the jury to resolve because Collectcents was not sued until more than one year after September 24, 2014.

There also is no question for the jury to resolve with respect to whether the identity of Collectcents would have been known through reasonable diligence. The court is mindful that Klein's evidence includes recorded calls wherein Collectents has referred to itself, the calling party, as "Just Energy" or "Just Energy Ohio" when making the challenged phone calls. What Klein characterizes as "active concealment," (ECF Nos. 124 at 8; 125 at 8), appears to be the ordinary means of doing business by Collectcents. Nevertheless, the same September 24, 2014 responses to disclosures that identified Commerce Energy by name specifically indicated that a third-party caller was utilized for the debt collection. Klein cannot show, as he must, viewing the facts in the light most favorable to him, that the identity of Collectcents as the calling party would not have been known to him through reasonable diligence, or quite frankly, any diligent inquiry at all. Klein's own court filings, for example, reveal that:

> [i]n September, 2014 Plaintiff learned for the first time via discovery that a third party may have placed the subject collection calls. The [Just] Energy' Defendants

stated in their responses to Plaintiffs' Interrogatories in this matter that the Just Energy Defendants "use[d] a third-party independent contractor collection agency for debt collection purposes and therefore do not make outbound telephone calls for purposes of collecting debts."

Klein's Motion for Leave to File Second Amended Complaint (ECF No. 48 ¶ 4).

After instituting this case, Klein had at his disposable the wealth of discovery tools provided for in the Federal Rules of Civil Procedure. Instead, Klein relies on the assertion that at the time he *originally* instituted this action the identity of the calling party was not known to him. Commerce Energy and Collectcents aptly argue that there is no genuine dispute that by the service of Just Energy Defendants' responses to discovery Klein had actual notice of Commerce Energy's involvement and that an entity other than any of the Just Energy Defendants and Commerce Energy had placed the offending calls. In the face of this record evidence, the court holds that Klein's claims for invasion of privacy are time barred as a matter of law and Collectcents and Commerce Energy are entitled to summary judgment with respect to the invasion of privacy claims in Counts II and V.

Collectcents argues that Klein's negligence claim against it also is time barred, but only in part, for calls made prior to January 20, 2014, (ECF No. 114 at 19), which is two years prior to the time Klein first sued Collectcents. Seeking to apply the statute of limitations as a partial bar to the negligence claim, Collectcents appears to approach the allegations of negligence as if the offending calls would segregate into multiple claims or harms. Klein does not address the distinction and merely asserts the discovery rule and active concealment as a basis for tolling the limitations period. Neither Collectcents nor Klein addresses what would be the appropriate approach to Klein's claim that numerous offending calls made over a period of time resulted in

his distress, and therefore, the timeliness of the negligence claim against Collectcents remains uncertain.

Continuing violations doctrine permits relief for earlier related acts otherwise time barred when the conduct is part of a continuing practice if the last act as part of the continuing practice is within the statutory time period. <u>Cowell v. Palmer Twp.</u>, 263 F.3d 286, 291–293 (3d Cir. 2001) Yet "time-barred claims cannot be resurrected by being aggregated and labeled 'continuing violations.'" <u>Jones v. Middletown Twp.</u>, 253 F.App'x 184, 187 (3d Cir. 2007). If the calls are considered part of a continuing pattern, it might be said that so long as Klein brought the action against Collectcents within two years of the most recent date on which Collectcents made an offending call to Klein the claim is timely filed. If the calls are considered discrete acts, then for each of them Klein must have brought the action against Collectcents within two years of the call. Under this approach, absent tolling, Klein's claims for any calls made prior to January 20, 2014 would be time barred.[17]

In an analogous context in a case brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(d), the district court in <u>Cutler ex rel. Jay v. Sallie Mae, Inc.</u>, No. EDCV-13-2142, 2015 WL 1909482, at *5–6 (C.D. Cal. Apr. 24, 2015), considered claim accrual:

> [T]he FDCPA [has] a one-year statute of limitations. Navient argues that Plaintiff's [] claims are barred by this statute of limitations because it informed Plaintiff on November 23, 2011, that it had conducted an investigation and determined that there was insufficient evidence to support her claim. . . . [A]s of November 23, 2011, Plaintiff was made aware that it would continue to attempt to seek repayment of the loan and that the statute of limitations thus ran on November 23, 2012. Plaintiff responds that (1) each violation of the FDCPA []

---

[17] The court recognizes that a claim of negligence *per se* inflicting emotional distress could not be made out from one robocall to the wrong party and that there would be a necessity for calls in the aggregate that rise to the level of a cognizable harm. Because the court determines that Klein cannot succeed on a claim for violation of the TCPA and as a result cannot proceed on a negligence *per se* theory based on a violation of the TCPA, it need not determine at what precise line of divination a claim for emotional distress caused by numerous robocalls could arise.

must be governed by a separate statute of limitations, and (2) the entire conduct can be viewed as a continuing violation that falls within the statute of limitations as long as the challenged conduct has links to unlawful conduct that took place within the statute of limitations. Plaintiff argues that Navient has engaged in a continuing pattern of debt collection abuse . . . .Determining whether the statute of limitations bars a FDCPA . . . claim depends on an analysis of the type of conduct alleged. Generally, a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action. Certain kinds of acts prohibited by the FDCPA . . . , a phone call at midnight, or a threatening call to a consumer's employer, are discrete acts, and thus the statute of limitations runs from the point at which the plaintiff has reason to know of these acts. Other prohibited acts, however, involve repeated conduct. For example, claims of a pattern of debtor harassment consisting of a series of calls cannot be said to occur on a particular day, but rather constitutes a continuing pattern and course of conduct. If there is a pattern, then the suit is timely if the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA, and the entire course of conduct is at issue.

2015 WL 1909482, at *5–6 (C.D. Cal. Apr. 24, 2015) (internal citations and quotations omitted);

see Langman v. Keystone Nat'l Bank & Trust Co., 672 F. Supp. 2d 691 (2009) (doctrine could

apply in abuse of process action), aff'd sub nom. Langman v. Keystone Nazareth Bank & Trust

Co., 502 F.App'x 220 (3d Cir.2012), Beasley v. Young, Ricchiuti, Caldwell & Heller, LLC, No.

2873 EDA 2012, 2013 WL 11250696, at *6–7 (Pa. Super. Ct. Nov. 4, 2013) (focus is on

continuing affirmative acts of defendant); Cowell, 263 F.3d at 292 (under the doctrine, a

defendant's conduct as part of a continuing practice may render action timely if the last act

evidencing the continuing practice falls within the limitations period and court may afford relief

for earlier related acts otherwise time barred).

The evidence shows calls beginning in September 2013 and continuing until August

2014, only four of which Collectcents contend actually occurred more than two years before it

was sued. While a claim under the TCPA for a discrete incident, such as a robocall made in

violation of § 227(b)(1)(A)(iii) and subjecting the offender to minimum per occurrence damages

under § 227(b)(3)(B) ("an action . . .to receive $500 in damages for each such violation), may begin to run the statute of limitations, where Klein claims a pattern of calls as the basis for negligent infliction of emotional distress, the entire course of conduct could be at issue. So long as Klein has sued Collectcents within two years of the most recent offending call, then his claim for negligence arguably is timely. The court cannot say as a matter of law that Klein's negligence claim against Collectcents is time barred, even in part, and if the negligence claim were otherwise sufficient, the matter of timeliness would be for the jury to resolve.

### b) Claim for Invasion of Privacy Under Intrusion Upon Seclusion Theory

The court has determined that the invasion of privacy claims against Collectcents and Commerce Energy are time barred, but will briefly address the additional bases urged for summary judgment. Pennsylvania recognizes the common law tort of invasion of privacy, which is "comprised of four analytically distinct torts: 1) intrusion upon seclusion, 2) appropriation of name or likeness, 3) publicity given to private life, and 4) publicity placing a person in false light." Marks v. Bell Tel. Co. of Pa., 331 A.2d 424, 430 (Pa. 1975) (citing Vogel v. W.T. Grant Co., 327 A.2d 133 (Pa. 1974)). Under Pennsylvania law governing intrusion upon seclusion theory pursued by Klein, "[t]o maintain this claim, a plaintiff must show that the intrusion was (1) intentional; (2) upon the solitude or seclusion of the plaintiff, or his private affairs or concerns; and (3) substantial; and (4) highly offensive." Pacitti v. Durr, Civ. Act. No. 05-317, 2008 WL 793875, at *25 (W.D. Pa. Mar. 24, 2008) (citing Larsen, 543 A.2d at 1186-87), aff'd, 310 F.App'x 526 (3d Cir. 2010); see Tucker v. Merck & Co., Inc., 102 F.App'x 247, 256 (3d Cir. 2004).

The Pennsylvania Supreme Court in Vogel v. W.T. Grant Co., held that "[t]he

Restatement (Second) of Torts has . . . arrived at an accurate formulation of the tort of invasion of privacy." 327 A.2d at 135-136 & n.9.  Thus, "[v]iolation of Section 652B is an actionable tort in Pennsylvania." Larsen v. Philadelphia Newspapers, Inc., 543 A.2d 1181, 1187 (Pa. Super. Ct. 1988); see also York Group, Inc. v. Pontone, Civ. Act. No. 10-1078, 2014 WL 896632, at *32 (W.D. Pa. Mar. 6, 2014).

The Restatement (Second) of Torts on intrusion upon seclusion theory provides:

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

RESTATEMENT (SECOND) OF TORTS § 652B (1977). The Pennsylvania Superior Court has found that "the Comments to Section 652B are instructive."   Tagouma v. Investigative Consultant Serv., Inc., 4 A.3d 170, 174 (Pa. Super. Ct. 2010); see Benkoski v. Wasilewski, Civ. Act. No. 3:07-CV-0197, 2007 WL 2670265, at *14 (M.D. Pa. Sept. 7, 2007).

The following scenario described in comment d to the Restatement (Second) of Torts § 652B is squarely on point:

There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

RESTATEMENT (SECOND) OF TORTS § 652B, cmt. d (1977); see Leyse, 804 F.3d at 325 (Congress was animated by what consumers referred to as "an intrusive invasion of privacy" from prerecorded telemarketing calls).

The numerous calls made to Klein appear to fall within the example in comment d to the Restatement. Although this court held that Klein could not bring a claim for private nuisance as this case does not implicate the right of a land owner, <u>Klein v. Just Energy Group, Inc.</u>, Civ. Act. No. 14-1050, 2015 WL 3407837, at *4 (W.D. Pa. May 27, 2015), Klein in theory could bring a claim for invasion of privacy based on the intrusion upon seclusion theory. Collectcents and Commerce Energy, however, argue that: the calls to Klein were not an intentional intrusion upon his solitude or seclusion, but were an accidental intrusion due to the mistake in recording the phone number of Klein rather than the number of P.S. and the use of that number for collection. (ECF Nos. 114 at 17; 120 at 15; 136 at 8).

In <u>O'Donnell v. United States</u>, 891 F.2d 1079 (3d Cir. 1989), the Court of Appeals for the Third Circuit considered what constitutes the required intentional intrusion for a claim to proceed under the intrusion upon seclusion theory. The court instructed:

> We conclude that an actor commits an *intentional* intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act. We emphasize that the intrusion, as well as the action, must be intentional. The Restatement supports this conclusion and . . . Pennsylvania courts have consistently followed the Restatement in this area of tort law. Therefore, we predict that, if presented with a similar case, the Pennsylvania Supreme Court would adopt our conclusion as to what makes an intrusion upon seclusion *intentional.*

<u>O'Donnell</u>, 891 F.2d at 1083 (emphasis in original).

Viewing the evidence in the light most favorable to Klein, the court must conclude that a reasonable jury could find the action challenged was intentional. The court understands that when Collectcents originally called Klein it was unaware of the mistake regarding the correct number to call and thus used Klein's number in collections on the account of P.S., and if the evidence did not go beyond those facts, summary judgment might be granted in favor of

47

Collectents with respect to intent. Klein, however, makes a valid point that once, as he asserts, he informed the calling party that they were calling the wrong number, going forward in making the calls to Klein's number the intentional nature of the calls to Klein could reasonably be inferred. (ECF Nos. 124 at 7; 125 at 7). Having been notified the wrong number was being called, a reasonable jury could find that the caller did not reasonably believe it had the necessary legal or personal permission for the intrusive contact.

Klein contends he notified the calling party that they were using the wrong number. Id. Collectents' own call logs, though at times difficult to decipher with no legend being supplied by the parties, provide evidence that the Collectents' calling agent had received a call from a male indicating that the number being dialed for the collection calls was the wrong number. (ECF No. 122-5 at 2, 8, 11). There appear to be notations indicating a different number for Collectents to call to collect the debt (entry line 8 for October 8, 2013: "LOCATED CX@[___-___]-9207, ALSO"), although Collectents for the majority of the calls continued to use Klein's VoIP number. The call logs support that the calls to Klein's VoIP temporarily ceased from October 9, 2013, until January 29, 2014, when they began again in earnest, (ECF No. 122-5 at 2, 8, 11), and continued until August 2014. (ECF No. 122-5 at 10). Commerce Energy argues because the calls appear to have ceased at about the time when Klein notified the caller— Collectents identified as Just Energy on the call—that it was calling the wrong number and only began again a few months later when P.S. "once again became late on her account payments," (ECF No. 136 at 8), that this shows the intrusion was without intent as a matter of law. Commerce Energy's argument on notice—that Collectents called the wrong number for a time, then ceased, but started again when P.S. again became delinquent on her account—offers another

alternative: the calls by Collectcents to Klein's number ceased because the account was for a time not delinquent but, most importantly, resumed to Klein's number subsequently with disregard that Collectcents was calling the wrong number. The argument equally supports the notion of intent when viewed in the light most favorable to Klein.

Although there is no evidence to dispute that the calls initially made by Collectcents were without the belief that the necessary permission and authorization was lacking, there is sufficient evidence from which a reasonable jury could find that the continued calling of Klein's VoIP number after notice that is was not the right number to call, being called thereafter in excess of fifty-five times and two to three times a week on a regular basis by the court's review of the evidence, (ECF No. 122-5), was intentional for the purpose of a claim for invasion of privacy.[18] Thus, Collectcents and Commerce Energy are entitled to summary judgment on the claims against them for invasion of privacy based on the statute of limitations bar, but not based on the argument that the evidence is insufficient to show that the intrusion upon seclusion was intentional.

### c) <u>Negligence Claim against Collectcents</u>[19]

In support of summary judgment on the claim for negligence under Count III of the third amended complaint, Collectcents argues that: a) Klein cannot establish the elements of his claim for negligence seeking damages for emotional distress because he cannot show: a legally recognized duty owed by Collectcents; a breach of that duty; a causal connection between a

---

[18] Neither Collectcents nor Commerce Energy makes any argument with respect to whether the alleged intentional intrusion would be "highly offensive" to a reasonable person, which also is required for the claim. One court in this district determined that evidence revealing fourteen phone calls over three months, even though the caller was polite and did not threaten or abuse the receiver of the call, created a jury question on the issue whether the intrusion was highly offensive. <u>Desmond v. Phillips & Cohen Assoc., Ltd.</u>, 724 F. Supp. 2d 562 (W.D. Pa. 2010).

[19] Klein erroneously includes the same arguments on negligence in both of his opposition briefs. (ECF No. 124 at 8; 125 at 8). The court, however, previously dismissed the negligence claim and the claim for vicarious liability for negligence asserted against Commerce Energy.

breach of that duty by Collectcents and the invasion of an interest enjoyed; and that he was actually harmed or injured; and b) the claim should be dismissed pursuant to the law of the case doctrine because the court already dismissed the same negligence claims asserted by Klein against Commerce Energy.  (ECF No. 114 at 19, 20 & n. 7).

In order to prevail on a cause of action in negligence under Pennsylvania law, a plaintiff must establish: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another."  Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1366 (3d Cir. 1993) (citing Morena v. South Hills Health Sys., 462 A.2d 680, 684 n. 5 (Pa. 1983)); (ECF Nos. 21 at 8; 86 at 30 n. 12; 110 at 6).

In the third amended complaint, Klein attempted to articulate various duties owed to him, but concedes in his opposition to summary judgment that his claim for negligence is not based on any general duty emanating from common law, arguing instead that the source of the duty under Pennsylvania law is a statutory one created by the enactment of the TCPA.  (ECF No. 124 at 8).[20]  Klein clarifies that the duty he asserts arises from the TCPA, and that he pursues a theory of negligence *per se*, stating:

> Under Pennsylvania law, "[t]he concept of negligence per se establishes both duty and the required breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm." Cabiroy v. Scipione, 767 A.2d 1078, 1079 (Pa. Super. Ct. 2001).  Here the TCPA, the purpose of

[20] In the third amended complaint Klein asserted that Collectcents had the duty to:  1) ensure that calls it makes with respect to debt collecting are made to the correct telephone number, including actively monitoring calls for obvious signs that it might be placed to a wrong number, limiting the time period over which calls are made, and escalating non-responsive calls to a higher level of supervision in order to further investigate irregularities; and 2) immediately and permanently remove plaintiff's name from its call list, database, automatic telephone dialing system or other type of contact database when it or its agents, servants or employees are advised they had been calling the wrong number.  (ECF No. 95 ¶¶ 45-46).

which statute is to protect persons such as Plaintiff from unwanted and harassing communications, forms the basis of Plaintiff's claims.

(ECF No. 124 at 8). Klein thus pursues only a claim under the theory of negligence *per se*.

Collectcents indicates in reply that Klein's negligence *per se* theory is raised only now in response to summary judgment and thus the court should "summarily" reject it. (ECF No. 134 at 11). In Klein's third amended complaint he alleges that Collectcents violated the TCPA, these allegations are incorporated in Count III for negligence, and the allegations under Count III about negligence parrot the allegations on Collectcents' supposed violation of the TCPA. (ECF No. 95 ¶¶ 23, 43-47). Under negligence *per se*, a duty can arise from common law, by statute or by contract. AMCO Ins. Co. v. Emery & Assocs., Inc., 926 F. Supp. 2d 634, 642 (W.D. Pa. 2013) (internal quotations and citations omitted). The Court of Appeals for the Third Circuit observed in In re Orthopedic Bone Screw Products Liability Litigation, 193 F.3d 781, 790 (3d Cir.1999), "the doctrine of per se liability does not create an independent basis of tort liability but rather establishes, by reference to a statutory scheme, the standard of care appropriate to the underlying tort." Accordingly, the court will consider Klein's negligence *per se* theory.

Collectcents cites decisions from federal district courts in Hawaii and the District of Columbia, Sailola v. Municipal Serv. Bureau, Civ. No. 13-00544, 2014 WL 3389395 (D. Haw. July 9, 2014), and Alder Vision Lab Telecommunications, Inc., 393 F. Supp. 2d 35 (D.D.C. 2005), to argue that the TCPA does not support a theory of negligence *per se* because the TCPA provisions at issue here were not designed to protect the health and safety of individuals, but rather were directed to eliminate the nuisance of prerecorded or automated telephone calls. (ECF No. 134 at 11-12).

In Sailola the district court held that the plaintiff had "not demonstrated that the TCPA

provides a duty of care sufficient for a negligence cause of action. Plaintiff's recourse for violations of the TCPA is the statutory remedies themselves." <u>Sailola</u>, 2014 WL 3389395, at *9. Collectcents' reliance on <u>Sailola</u> is misplaced, however, because the question is whether Pennsylvania law would recognize the duty urged by Klein and the district court in <u>Sailola</u> prefaced its analysis with the indication that "Hawaii law does not recognize a negligence per se cause of action for violation of a statutory standard," <u>id.</u> at *9, in stark contrast to Pennsylvania law which does. <u>Mest v. Cabot Corp.</u>, 449 F.3d 502, 518 (3d Cir. 2006). Additionally, the District of Columbia Court of Appeals in <u>McCracken v. Walls-Kaufman</u>, 717 A.2d 346 (D.C. 1998), cited by <u>Alder</u>, 393 F. Supp. 2d at 41 n.9, specified that the District of Columbia courts require that the statute or District of Columbia code provision relied upon to establish negligence *per se* have been adopted to promote <u>public safety</u>. <u>McCracken</u>, 717 A.2d at 354. Finally, Collectcents' reliance on <u>Levin v. Dollar Tree Stores, Inc.</u>, Civ. Act. No. 06-00605, 2006 WL 3538964 (E.D. Pa. Dec. 6, 2006), for the proposition that negligence *per se* under Pennsylvania law requires a statute designed to promote safety likewise is misplaced because in <u>Levin</u> the plaintiff did not pursue a claim of negligence *per se* and instead alleged a claim for common law negligence with respect to a business invitee. <u>Levin</u>, 2006 WL 3538964, at *3.

The Court of Appeals for the Third Circuit in <u>Mest</u>, citing to <u>Wagner v. Anzon, Inc.</u>, 684 A.2d 570, 574 (Pa. Super. Ct. 1996), instructed:

> Under the doctrine of negligence per se, a violation of a statute may be grounds for finding that a defendant is per se liable. To assert a claim for negligence per se, the plaintiffs must demonstrate that: 1) the statute or regulation clearly applies to the conduct of the defendant; 2) the defendant violated the statute or regulation; 3) the violation of the statute proximately caused the plaintiff's injuries; and 4) the statute's purpose is, at least in part, to protect the interest of the plaintiff individually, as opposed to the public.

<u>Mest</u>, 449 F.3d at 518.  Under Pennsylvania law, the statute providing the duty does not need to be a state law enactment but may be a federal one.  <u>Karle v. National Fuel Gas Distrib. Corp</u>, 448 F. Supp. 753, 767 (W.D. Pa. 1978).  Collectcents would graft onto these requirements the additional requirement that negligence *per se* only applies to statutes, regulations or ordinances addressed to public health and safety.  (ECF No. 134 at 11).  The requirement urged is not specified in the applicable caselaw as a required element of a claim for negligence *per se* and is not stated in the formulation described by the Court of Appeals for the Third Circuit.  Additionally, <u>Cabiroy</u> refers to "public harm" and not "public health and safety."  767 A.2d at 1079.[21]

Arguably, the aim to eliminate invasive and repetitive robocalls and robofaxes that annoy, frustrate, harass, waste time, and foist expense on the receiving party is meant to deter a public harm. <u>See</u>  <u>City Select Auto Sales, Inc. v. David Randall Assoc., Inc.</u>, 296 F.R.D. 299, 310 (D. N.J. 2013) (damages provisions of TCPA designed to compensate and deter overall public harm) (citing <u>Texas v. Am. Blastfax, Inc.</u>, 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000)); <u>US Fax Law CTR., Inc. v. iHire, Inc.</u>, 362 F. Supp. 2d 1248, 1253 (D. Colo. 2005) (Section 227(b)(3) providing statutory damages at a minimum enacted to address a public harm).  Regardless, this court determined <u>supra</u> that there is insufficient evidence from which a reasonable jury could find that Collectcents violated the TCPA and Klein's negligence claim is based on violation of that statute.  Therefore, Klein cannot succeed on his negligence *per se* claim and  Collectcents is entitled to summary judgment with respect to Count III for negligence.

---

[21] At least one decision, <u>Neuer v. Dental Resource Systems, Inc.</u>, No. 14-2319, 2015 WL 4634044 (D. Kan. July 27, 2015), has held that the TCPA would satisfy the requirement that the law be addressed to public safety.  2015 WL 4634044, at *8 (holding TCPA could be source of duty for negligence *per se* under Kansas law, which requires law addressed to public safety).

Collectcents is entitled to summary judgment on Klein's negligence claim under the law of the case theory as well. Similar to his prior pleadings, Klein asserts in the third amended complaint that as a result of Collectcents' negligence he suffered "mental distress, inconvenience, outrage, anger, aggravation, frustration, anxiety, and physical and mental distress as manifested by symptoms including aggravation of his depression and Anxiety conditions, dysphoria, loss of sleep, hypersomnia, fatigue, inability to concentrate, difficulty performing essential work/school functions, racing heart, headaches and tension." (ECF No. 95 ¶ 48). In addition to the ordinary requirements of duty, breach, causation and actual loss or damage, claims for emotional distress caused by negligence, such as Klein asserts, *also* must fit one of the following four factual scenarios: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." Daly v. New Century Trans, Inc., No. 11-2037, 2012 WL 4060687, at *7 (M.D. Pa. Sept. 14, 2012) (citing Toney v. Chester Cnty. Hosp., 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008)).

Collectcents contends that Klein "has failed to produce any evidence reflecting a medical diagnosis" or a "causal relationship" between his injuries and the acts of Collectcents, citing Abuhouran v. United States, 595 F. Supp. 2d 588 (E.D. Pa. 2008). (ECF 114 at 21-22). Abuhouran is inapposite. Abuhouran involved a claim under the Federal Tort Claims Act for negligence causing exacerbation of a prisoner's asthma through exposure to environmental tobacco smoke ("ETS"). Therein the court ruled that "[p]roving causation in medical matters requires expert testimony unless it is so obvious and within ordinary comprehension such that a

nonprofessional can identify the lack of care. . . . In ETS cases in which the plaintiff alleges specific and current and future ailments, the claim must be supported by the medical record." 595 F. Supp. 2d at 594-95.

Injury is an element to be proven. Kazatsky v. King David Memorial Park, Inc., 527 A.2d 995 (Pa. 1987). Medical evidence, however, is not required under Pennsylvania law to establish a claim for negligent infliction of emotional distress. The Pennsylvania Superior Court in Krysmalski by Krysmalski v. Tarasovich, 622 A.2d 298 (Pa. Super. Ct. 1993), specifically held:

> [M]edical evidence is not required in an action for damages for *negligent infliction of emotional distress*. Our Supreme Court has held that where a bystander witnesses injury to a close relative, the contemporaneous observance and close relationship guarantee the veracity of the claim. Kazatsky v. King David Memorial Park, 515 Pa. 183, 527 A.2d 988 (1987). The medical proof requirement was intended to buttress the requirement of proof of outrageous conduct in the context of *intentional infliction of emotional distress* claims. Id. In contrast, the Kazatsky Court noted that it "endorsed an objective standard for the recovery of damages which limited recovery for serious mental distress to situations where a reasonable person normally constituted would be unable to adequately cope with the mental distress engendered by the circumstances of the event." Id. at 193-94, 527 A.2d at 993.

622 A.2d at 305 (emphasis added). Thus, under the four factual scenarios to which a claim for negligent infliction of emotional distress is restricted, see Klein v. Just Energy Group, Inc., 2015 WL 3407837, at *5; Toney v. Chester County Hosp., 961 A.3d 192, 197-98 (Pa. Super. Ct. 2008); Daly v. New Century Trans, Inc., No. 11-2037, 2012 WL 4060687, at *7 (M.D. Pa. Sept. 14, 2012), medical evidence is not required for Klein to establish the claim. Krysmalski by Krysmalski, 622 A.3d at 305; Buttermore v. Caliber Home Loans, Civ. Act. No. 15-1514, 2016 WL 308875 (W.D. Pa. Jan. 25, 2016).

With respect to law of the case, this court stated in ruling on Commerce Energy's motion to dismiss:

Law of the case doctrine embodies the prudential policy counseling in favor of a court not redeciding issues earlier resolved in the case. <u>Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc</u>., 123 F.3d 111, 116 (3d Cir. 1997). The doctrine applies not only to a coordinate court in the same case, such as on transfer, but also to the court's own prior decisions in the same case, and promotes judicial economy. <u>Id.</u> at 116. Absent extraordinary circumstances, a court should be loath to revisit its prior decision in the same case though it has the power to do so. <u>Christianson v. Colt Indus. Operating Corp</u>., 486 U.S. 800, 817 (1988). A decision to revisit should be limited to where the prior decision was clearly erroneous or where the prior decision would work a manifest injustice, such as where: (1) new evidence is available; (2) a supervening new law has been announced; and (3) the earlier decision was clearly erroneous and would create a manifest injustice, <u>Magnesium Elektron, Inc</u>., 123 F.3d at 116-117, all of which the court finds inapplicable here and none of which are urged by Klein. . . .

The court twice previously concluded that Klein's attempted negligence claims fail because they do not fall within one of the four categories required to bring a claim for negligent infliction of emotional distress. Klein repeats in the third amended complaint the allegations from the prior complaints regarding negligence causing emotional distress, <u>compare</u> (ECF No. 95 ¶¶ 18, 19, 65, with ECF Nos. 2 ¶57 and 51 ¶¶ 39, 80), without attempting to bring them within one of the four scenarios required under Pennsylvania law. Therefore, the present claims for negligence and for vicarious liability for negligence attempted in the third amended complaint fail for the same previously announced reasons.

<u>Klein v. Just Energy Group, Inc.</u>, 2016 WL 6822810, at *4. At this juncture, the court has ruled three separate times that Klein's claims for negligence causing emotional distress, the only injury asserted by Klein, fail because he did not attempt to bring them within one of the four scenarios required under Pennsylvania law. Collectcents is entitled to summary judgment on the negligence claim for this additional reason.

Accordingly, summary judgment will be entered in favor of Collectcents on Klein's claim for negligence under Count III of the third amended complaint under the law of the case, because Klein cannot show a violation of the TCPA as required for his claim of negligence *per se*, and because Klein did not bring his claim within the four scenarios required for negligent

infliction of emotional distress.

### d) **Vicarious Liability for State Law Claims under Count V**

In Count V, Klein asserts that Commerce Energy is vicariously liable for Collectcents' invasion of Klein's privacy. The court indicated _supra_ that the invasion of privacy claims are barred by the statute of limitations. Commerce Energy also argues that it cannot be held vicariously liable for the invasion of privacy claim because of lack of evidence of agency. (ECF No. 120 at 14). The same vicarious liability analysis engaged in _supra_ with respect to the TCPA applies to the claim for vicarious liability for invasion of privacy, and therefore, the asserted lack of evidence of agency does not provide an additional basis for summary judgment in favor of Commerce Energy on the state law claims against it.

## VI. <u>CONCLUSION</u>

Viewing the evidence in the light most favorable to Klein, the court concludes that Klein failed to adduce sufficient evidence for a reasonable jury to find, either directly or vicariously, a violation of the TCPA. The court further concludes that Klein's negligence claim against Collectcents fails for lack of a violation of the TCPA and because the claim does not fall within one of the four scenarios for negligence causing emotional distress. The court finally determines that the claims against Collectcents and Commerce Energy for invasion of privacy are time barred. Accordingly, Collectcents' motion for summary judgment with respect to Counts I, II and III and Commerce Energy's motion for summary judgment with respect to Counts IV and V will be granted. Judgment will be entered against Klein and in favor of Collectcents on all counts against it and against Klein and in favor of Commerce Energy on all counts remaining against it.

There being no claims remaining in this action, the court will order this matter marked closed.

An appropriate order follows.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

Dated:  June 21, 2017